

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

...................................................x

REGINALD LEAMON ROBINSON, PRO SE

Plaintiff,

-- against ---                              No. 1:18-cv-00518-TNM

**JURY IS DEMANDED**

HOWARD UNIVERSITY, INC., ET AL.;

Defendants.

...................................................x

**PLAINTIFF PRO SE'S REPLY IN SUPPORT OF HIS RULE 56(d) MOTION AND
DECLARATION TO DELAY THIS COURT'S RULING ON DEFENDANTS' MOTION
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**COMES NOW** Reginald Leamon Robinson, plaintiff pro se, on behalf of and for himself,[1] who submits this reply in support of his Rule 56(d) motion and declaration, which comes in response to defendants' motion to dismiss or in the alternative for summary judgment. ECF No. 20.

## I.      INTRODUCTION

On June 28, 2018, plaintiff filed his First Amended Complaint. Docket No. 13. In response, defendants filed a motion to dismiss or in the alternative a motion for summary judgment. ECF No. 20. On August 27, 2018, plaintiff filed his motion in opposition to defendants' motion to dismiss. Docket No. 22. He also filed a Rule 56(d) motion in opposition to defendants' motion in the alternative for summary judgment (Docket No. 22), which this

---

[1] BLACK'S LAW DICTIONARY (4th ed. 2018) ("**Pro Se**: one proceeding for himself and on their own behalf, in person."); *Ashbourne v. Hansberry*, 302 F.Supp.3d 338, 347 (D.D.C. 2018) (plaintiff pro se, an attorney, filed an action against defendants, alleging a violation of the Privacy Act, and in the face of defendants' motion to dismiss, the court stated that in addition to accepting nonmovant's factual pleadings as true, it "must *also* give the plaintiff the 'benefit of all inferences that can be derived from the facts alleged.' *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). As applicable here, a 'pro se complaint is entitled to liberal construction.' *Washington v. Geren*, 675 F.Supp.2d 26, 31 (D.D.C. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972))." (italics added).

1

Court dismissed for failure to comply with *Convertino v. DOJ*. Minute Order, dated Sept. 24, 2018. On October 8, 2018, plaintiff refiled his Rule 56(d) motion. Docket No. 29. On October 26, 2018, defendants filed an opposition to plaintiff's Rule 56(d) motion. Today, plaintiff files this reply in support of his Rule 56(d) motion and declaration, arguing that the Court should deny as premature defendants' pre-discovery, pre-answer motion for summary judgment, where defendants' Statement of Facts ("SOF"), defendant Smiley's declaration, and defendant Smiley's (and defendant Howard's) Report of Investigation ("Report") still leave present genuine issues of material fact.

## II.    FACTUAL HISTORY OF PRE-TRIAL POSTURE

In his First Amended Complaint, plaintiff made the following pleadings, leading to ten (10) counts. First, he alleged that he had an employment contract with defendant Howard. First Am. Compl., ¶¶ 21-27. Second, he had a contractual entitlement to academic freedom and free speech. *Id.*, at ¶¶ 28-47. Third, he had a reasonable contractual expectation to be free of arbitrary and capricious personnel action under § 2.8.2. of the *1993 Faculty Handbook. Id.*, ¶¶ 48-78. Fourth, the two upper-class female students never filed allegations against plaintiff, which were pursuant to the Title IX Policy, and during the interview, it was clear that they were principally angry with plaintiff because they disliked his published ideas and beliefs in two peer-reviewed articles, his informal professional demeanor, his conduct that was incorrect hearsay, and his salutations/signs off in emails. *Id.*, ¶¶ 88-107.

Fifth, based on the Report of Investigation ("Report"), defendant Howard failed to meet its burden of proof of production and persuasion. *Id.*, ¶¶ 122-137. Sixth, defendant Howard adopted and applied an unknown and unpublished subjective experience test, which gave undue evidentiary weight to the students' allegations that were not pursuant to Title IX's prohibition

against sex-based discrimination, and which shifted impermissibly the burden of proof to plaintiff to prove that he did not violate the Policy, even though defendant Smiley refused to give him actual notice and proper notification of the factual allegations against him, and even though defendant Smiley knew or had reason to know that their complaints were not made pursuant to defendant Howard's Policy. *Id.*, ¶¶ 138-146. Seventh, based on the December 4, 2015 interview, even though as presented in the Report the transcript was not a true and correct statement of the actual interview, defendant Smiley, and thus by ratification defendant Howard, adopted a believe the victim stance. *Id.*, ¶¶ 148-161. Eighth, his Question 5 of KDO 5 was reasonably related to the teaching of Agency Law. *Id.*, ¶¶ 181-187.

Ninth, defendant Smiley's Rationale within the Report relied exclusively either on speculative, unsupported statements by her or by the two female upper-class law students, or on irrelevant, immaterial, and inadmissible character evidence that was more prejudicial than probative. *Id.*, ¶¶ 188-200. Tenth, defendant Howard failed to follow its own published rules and regulations under its Title IX Policy based solely on a fair reading when defendant Smiley, who already knew or had reason to know that the December 4, 2015 allegations against him were not made pursuant to Title IX's prohibition against sex-based discrimination, refused to give plaintiff the required actual notice of the alleged material facts. *Id.*, ¶¶ 214-226. Eleventh, defendant Howard had been under public fire arising out of or under the Jane Doe 5 complaints of sexual assault against male students and employees, which defendant Smiley mishandled, and issued the unsupported Notice of Findings ("Notice") against plaintiff as part of defendant Howard's "get tough" stance for consumption by OCR and/or by a federal court in *Jane Doe 5 v. Howard University*. *Id.*, ¶¶ 227-253. Twelfth, defendant Howard breached its employment contract with plaintiff as defined by and understood through the *1993 Faculty Handbook* when it issued an

unsupported Notice, which violated plaintiff's reasonable contractual expectation to be freed of arbitrary and capricious personnel decisions. *Id.*, ¶¶ 258, 259, 261, 262.

After plaintiff filed his amended complaint, defendants filed their motion to dismiss or in the alternative a motion for summary judgment.  Plaintiff responded by filing an opposition memo.  Second, he filed a Rule 56(d) motion, which failed to comply with the test under *Convertino v. DOJ*, and for that reason, this Court denied plaintiff's motion.  Plaintiff re-filed a Rule 56(d) motion and declaration that complied with *Convertino*'s three tests, first describing with particularity what he intended to discover  and why, second stating that the documents, records, and/or correspondences that he seeks are in the possession, dominion, and control of defendant Howard, and third stating that such documents, records, and/or correspondence are in fact discoverable. *See Convertino v. DOJ*, 684 F.3d 93, 99-100 (D.C. Cir. 2012).  On October 26, 2018, defendants opposed plaintiff's Rule 56(d) motion, arguing in part and wrongly that plaintiff wishes to engage in impermissible fishing expedition.

In support of their motion for summary judgment, defendants went beyond plaintiff's pleadings by providing a Statement of Facts ("SOF"), defendant's Smiley's declaration, and a Report of Investigation ("Report"), none of which leads to the absence of *any* issue of material fact, and based on the presence of these genuine issues of material facts.

In his reply in support of his Rule 56(d) motion, plaintiff argues that not only did his Rule 56(d) motion comply with *Conventino*'s three tests, but also his discovery request was narrowed to the time frame from December 4, 2015 to the present, related to his 12 broad pleadings and 10 claims, and structured to deal with the still existing genuine issues of material facts that remain due to the manner in which defendants' SOF and declaration were crafted, and the lack of legal sufficiency in defendant Smiley's Report of Investigation.

## III.   DISCUSSION

### A.   Federal Rule of Civil Procedure Rule 56(d).

FED. R. CIV. PRO. RULE 56(d) provides:

(d) If a nonmovant shows by **affidavit** or **declaration** that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1)   defer considering the motion or deny it;
> (2)   allow time to obtain affidavits or declarations or to take discovery; or
> (3)   issue any other appropriate order.

(bold added).

### B.   Legal Standard.

Under Federal Rule of Civil Procedure 56, having relied on material outside of the pleadings, defendants have asked this Court to treat their motion to dismiss as a motion for summary judgment. *See Jeffrey v. Lynch*, 217 F.Supp.3d 214, 226 (D.D.C. 2016). This Court must grant defendants' motion for summary judgment if movant has shown that no genuine issue of any material fact exists, and that "movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a); *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010). "'[T]he party moving for summary judgment . . . bears the initial burden of identifying evidence that demonstrates that absence of any genuine issue of material fact.'" *Miller v. Hersman*, 594 F.3d 8, 12 (D.C. Cir. 2010) (quoting *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999)). In adjudicating a motion for summary judgment, "all inferences must be viewed in a light most favorable to the non-moving party." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

The defendants, the moving party, must make a showing of the absence of *any* issue of material fact. So long as such material facts remain in dispute, this Court should only grant summary judgment after the parties have been given an adequate opportunity for discovery. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (observing that summary judgment is

appropriate only "after adequate time for discovery"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 and 257 (noting that summary judgment should be refused "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," and that the nonmoving party should have "a full opportunity to conduct discovery"); *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (summary judgment "ordinarily 'is proper only after the plaintiff has been given adequate time for discovery'") (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)); *Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C. Cir. 1987) ("a reasonable opportunity to complete discovery before grappling with a summary judgment motion is the norm"). However, before this Court rules on defendants' motion for summary judgment, the parties must have been afforded a "reasonable opportunity to present all the material that is pertinent to the motion." *Id.*, citing Fed. R. Civ. Pro. 12(d); *see also Weisberg v. U.S. Dep't of Justice*, 543 F.2d 308, 310 n.5 (D.C. Cir. 1976).

When evaluating whether genuine dispute of material fact exists, this Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*,572 U.S. 650, 656 (2014). Moreover, nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). If the movant and nonmovant "tell different stories, one of which is blatantly contradicted by the record, so that non reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Lynch*, 217 F.Supp.3d at 226-27 (quoting *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015), quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). This Court "is only required to consider the materials

explicitly cited by the parties, but may on its own accord consider 'other materials in the record.'" *Lynch*, 217 F.Supp.3d at 227 (quoting Fed. R. Civ. Pro. 56(c)(3)).

Before responding to a motion for summary judgment, plaintiff may ask this Court to delay ruling on defendants' motion in the alternative. *See Lynch*, 217 F.Supp.3d at 227.  In *Grimes v. Dist. of Columbia*, the D.C. Circuit Court stated that Rule 56(d) established "a mechanism for nonmovants who lack the facts they need to seek an opportunity to gather more information *before* responding to a motion for summary judgment." *Grimes v. Dist. of Columbia*, 794 F.3d 83, 92 (D.C. Cir. 2015); *see also Crawford-El v. Britton*, 523 U.S. 574, 599 n.20 (1998) ("under Rule 56(d)'s predecessor provision [former Rule 56(f)], a district judge 'ha[s] discretion to postpone ruling on a defendant's summary judgment motion if the plaintiff needs additional discovery to explore facts essential to justify the party's opposition.'") (internal quote omitted) (italics added).  Per Rule 56(b), defendants "may file a motion for summary judgment at any time until 30 days after the close of discovery." Fed. R. Civ. Pro. 56(b).  As plaintiff stated in his Rule 56(d) motion, no discovery has taken place in this case. Pl. Pro Se's Rule 56(d) Declaration, dated and signed on Oct. 8, 2018, ¶ 37; Pl. Pro Se's Rule 56(d) Motion, at 1, 6.

To obtain Rule 56(d) relief, the movant must submit an affidavit or declaration that, "for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. Pro. 56(d).  Rule 56(d) is "designed to safeguard  against premature or improvident grant of summary judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

C.     **Analysis.**

    1.     **Plaintiff's Rule 56(d) Motion and Declaration.**

In plaintiff's Rule 56(d) declaration, he stated that "What Plaintiff seeks goes beyond the Report of Investigation ("Report") and its exhibits of Defendants' summary judgment motion, which were not materially relevant to the following question:  did the giving on September 17, 2015 of a sex and gender neutral quiz that fell squarely within the scope of Plaintiff's employment, the providing of feedback, and the telling of students not to share their personal experiences of personal grooming constitute unwelcome sexual advances, request for sexual favors, and verbal, nonverbal or conduct of a sexual nature in violation of Title IX rules and regulations generally and of Defendant Howard's Title IX Policy specifically?"  Pl. Pro Se's Rule 56(d) Declaration, dated Oct. 8, 2018, ¶ 6.

In addition, plaintiff stated, "That Report and its exhibits were also immaterial to whether Defendant Smiley, having conducted an interview on December 4, 2105 of two upper-class female law students who did not allege that Plaintiff had engaged in sexual harassment, fraudulently, maliciously, intentionally, recklessly converted such allegations, which were not filed pursuant to Defendant Howard's Title IX Policy, into allegations of sexual harassment and gender discrimination in Howard's formal notice complaint on December 17, 2015." *Id.*

In plaintiff's declaration, he stated that his request not for additional time for discovery but simply for the opportunity for discovery would be essential to every claims against defendants. *Id.*, ¶ 7.  In ¶ 8, he set forth each of the ten (10) in his First Amended Complaint. *Id.* In ¶¶ 10 through 34, plaintiff tied his request for discovery of documents, records, and/or correspondences to the factual claims that he must adduce not only to respond to defendants' pre-answer and pre-discovery motion for summary judgment, but also to pleadings and claims in his First Amended Complaint.

Despite defendants stating in their opposition to plaintiff Rule 56(d) motion that he wishes to engage in a fishing expedition, plaintiff simply seeks an opportunity for discovery through records, documents, and/or correspondences that under agency law, defendant Howard's leadership, e.g., Board of Trustees, had at the very least inquiry notice that, if true, plaintiff had suffered sex-based discrimination, which they were empowered to redress.  However, without documents, records, and/or correspondences, plaintiff cannot adduce evidence on this claim. Likewise, plaintiff has alleged that defendant Wutoh retaliated when he issued a summary rejection of plaintiff's appeals memorandum, after plaintiff had informed him that he would send his file to FIRE.  On this claim, plaintiff would need to know the manner in which defendant Wutoh satisfied his due diligence required under the Policy, and whether or not he used a similar process to evaluate his appeal memorandum. *See* Policy, at 14.

Moreover, based on defendant Wutoh's job description, which would be approved by the Board of Trustees, under what set of institutional circumstances could defendant Wutoh delegate his terminal authority as the Title IX Decisional Authority to agent and/or employee, especially to evaluate an allegations against the very agent and/or employee to whom he delegated his review and decisional authority.   By gaining access to the documents, records, and/or correspondences in the Title IX Office and between the Title IX Office and defendant Howard's leadership, plaintiff can adduce evidence on whether defendant Howard not only acted arbitrary and capricious, but also breached plaintiff's employment contract as defined by and understood through the 1993 Faculty *Handbook*. *See* 1993 FACULTY HANDBOOK § 2.8.2.

For example, in ¶ 11, plaintiff seeks discovery that would permit him to determine whether defendants Wutoh, Love, and Smiley were sufficient training as required by OCR to recognize sexual harassment and to enable them to redress such sexual misconduct through

determined by Title IX rules and regulations and the process and procedures under defendant Howard's Title IX Policy.  This discovery would help determine whether defendants Love and Smiley knew or had reason to know the proper evidentiary standards and evaluation tool so that they could investigate factual allegations that were filed pursuant to the Policy that would be "impartial, thorough and timely."  Policy, at 13.  Based on the pleadings in this case, plaintiff need to discovery the manner and frequency by which Title IX Office's staff were trained would permit plaintiff to challenge when defendant Smiley's declaration about defendant Howard's investigation were based on her training or grounded in her lack of impartiality.

## 2.    Defendant Smiley's Declaration.

Assuming arguendo that plaintiff's Rule 56(d) failed to satisfy *Convertino*'s particularity standard, this Court must delay or deny defendants' motion in the alternative for summary judgment because they have failed to meet their "initial burden of identifying evidence that demonstrates that absence of any genuine issues of material fact."  *Hersman*, 594 F.3d at 12 (quoting *Dalton*, 164 F.3d at 675).

Specifically, defendant Smiley's declaration fails to eliminate genuine issues of material facts.  First, in ¶ 7, defendant Smiley never declared that she gave plaintiff actual notice of the alleged facts by complainants 1 and 2's complaint.  Despite the requirement that plaintiff draft a response to the important (i.e., material and relevant) facts in the Notice of Complaint, which were devoid of any actual notice of the alleged facts, defendant Smiley never gave such facts to plaintiff.  Smiley's declaration states:  "The Notice of Complaint advised Robinson that two students alleged that during the Fall of 2015 Robinson committed acts of sexual harassment and gender-based discrimination against several students."  Smiley's Declaration, dated Aug. 2, 2018, at ¶ 7.  However, Smiley never declared that under the Notice of Complaint, she gave

plaintiff actual notice of the factual allegations.  In plaintiff's First Amended Complaint, he alleged that by not giving him such notice (*See* First Am. Compl., ¶¶ 214-226), defendant Howard, by and through its officers, agents, and/or employees, violated the implied duty of good faith and fair dealing. *Id.*, ¶¶ 265-270.  In short, defendant Smiley's declared statement in ¶ 7 confessed that a genuine issue of material fact still exists.

Second, in ¶ 8, defendant Smiley declared that plaintiff "responded to the Notice of Complaint by letter dated December 21, 2015."  Smiley's Declaration, ¶ 8.  Defendant Smiley's crafted declaration failed to state whether plaintiff's response addressed the material and relevant facts of the alleged facts.  Under the Notice of Complaint, it provides:  "you have the right to be informed of the complaint and to submitted a written response to the charges.  That written response may be as long as you deem appropriate and should contain only those relevant statements and materials that you reasonably believe support your view of the important facts."  Notice of Complaint, dated Dec. 17, 2015, at 3.   On December 21, 2015, plaintiff did file a written response with defendant Smiley.  In that response, plaintiff glossed the Policy, and he stated that defendant Smiley was required to give him actual notice.  Thereafter, he simply declared, without having access to the alleged facts, that he did not engage in sexual harassment or gender-based discrimination. *See* Reggie's Formal Reply to the Notice of Complaint, dated Dec. 21, 2015, attached hereto as Ex. 1.  On the genuine issue of material fact of whether defendant Howard violated the implied duty of good faith and fair dealing, the Notice of Complaint did not recognize plaintiff's "right to be informed of the complaint."  To be properly informed, plaintiff must receive not only actual notice, which is a question of fact, but also proper notification as determined by a fair reading of the Notice of Complaint and defendant

Howard's Title IX Policy.  *See* RESTATEMENT (THIRD) AGENCY § 5.01(1), attached hereto as Ex. 2.

Third, in ¶ 9, defendant Smiley declared that "Howard University undertook an investigation to the students' complaint in accordance with its Title IX Policy."  Smiley's Declaration, dated Aug. 2, 2018, ¶ 9.  According to the Notice, it provides Smiley "shall conduct a thorough review of the allegations in a fair and impartial manner and with due regard for the rights of all concerned." Notice of Complaint, dated Dec. 17, 2015, at 1.  The Notice of Complaint also provides that defendant Smiley "investigates the factual allegations of the complaint under the procedures of the Policy."  *Id.* at 2.  Under the Policy, defendant Smiley's investigation must be conducted within 60 days.  Her investigation must be "impartial, thorough and timely."  Howard's Title IX Policy, at 13.  Based on defendant Smiley's declaration, ¶ 9 is crafted to mislead, and it raises the following fact-based questions, which are particularly germane to whether defendant Howard breached plaintiff's employment contract as defined by and understood through the *1993 Faculty Handbook*, and which are particularly relevant to whether defendant Smiley's application of the Title IX Policy constituted a breach by defendant Howard of the implied duty of good faith and fair dealing:

(1) was defendant Smiley's investigation thorough?;

(2) was her investigation impartial if she announced and applied the subjective experience test, which gave undue evidentiary weight to the two complaining female students, and which shifted the burden of proof to plaintiff, thus denying him the presumption of innocence?; and

(3) why did defendant Smiley's investigation take 504 days, only to leave her speculating that plaintiff lied about having two prior discrimination complaints against him, even though she

did not adduce one exhibit (or best evidence) as objective evidence of such complaints, and guessing about why she could find no record of any past complaints or investigations in plaintiff's personnel file?

Fourth, under ¶ 9, defendant Smiley declared that "Howard University undertook an investigation to the students' complaint in accordance with its Title IX Policy." Smiley's Declaration, dated Aug. 2, 2018, ¶ 9. Yet, apart from the highly edited and crafted narrative that purports to satisfy the best evidence rule, defendant Howard, including defendants Love and Smiley, never adduce a true and correct transcription of the interview of the two female students' actual interview and thus their actual plaintive words. Moreover, through both defendants' Statement of Fact and defendant Smiley's declaration, defendants never make statements or declarations about the two upper-class female students' actual complaints. In fact, defendants' motion in the alternative to dismiss is completely devoid of any reference or citation to the actual language of the complaints that goes to the prohibition of sexual harassment under Title IX's rules and regulations. Defendants' unwillingness to make Statement of Fact and/or declaration about the actual language of the two female students' actual complaint raises question of fact about:

(1) what was the principal purpose for the two female students filing their complaints against plaintiff which based on a reasonable reading of the highly crafted interview narrative were not filed pursuant to defendant Howard's Title IX Policy?;

(2) would a fair and reasonable reading of the true and correct transcript of the actual interview on December 4, 2105 give plaintiff admissible evidence that the two female students never raised any allegations of sexual harassment, and give plaintiff admissible evidence that defendant Smiley, and thus defendant Howard, fraudulently, outrageously, and maliciously

converted these students' complaint principally about plaintiff's legal scholarship, casual professional personality, email salutations and sign-offs, etc., into a false flag of a Title IX complaint?; and

(3) by reading the best evidence of the true and correct transcript of the actual interview on December 4, 2015 give rise to admissible evidence that defendant Smiley, and thus defendant Howard, made a unsupported Notice of Finding against plaintiff that violated his employment contract and his reasonable contractual expectations and entitlement as defined by and understood through the *1993 Faculty Handbook*?

By not making Statement of Facts and declaration that the two upper-level female law students made material and relevant statements of sexual harassment against plaintiff, defendants have failed to show the absence of any issue of material fact. *See Hersman*, 594 F.3d at 12; *Catrett*, 477 U.S. at 322.

Fifth, in ¶ 22, defendant Smiley declared, "Following the investigation, Report of Investigation and Findings, and the Provost's review, Howard University issued the Notice of Findings to Robinson on May 4, 2017." Smiley's Declaration, ¶ 22. According to the Policy, the Report "shall contain . . . findings of material facts." Howard's Title IX Policy, at 14 ((9) Resolution). In ¶ 22, defendant Smiley does not say that she made findings of material facts or conclusions of law. In the Report, defendant Smiley made no findings of material facts as required by the Policy. As plaintiff pointed out *supra*, defendant Smiley made statements, offered conclusions, and speculated wildly about immaterial and inadmissible documents. However, she did not make findings of material facts, even though the Policy specifically required her to do so.

Equally important under ¶ 22, defendant Smiley never stated exactly how defendant Wutoh satisfied his due diligence requirement, which is also required under the Policy. Under the Policy, "the Provost will then have 10 business days to review the report and determine if he or she: 1) agrees with the findings and the recommended disciplinary action; 2) agrees with the findings but disagrees with the recommended disciplinary action; or 3) disagrees with the findings." *Id.* Unfortunately, defendant Smiley's (and thus defendant Howard's) Report lacked any analytical force, and it was devoid of the required findings of material facts. This absence raises genuine issues of material facts, *viz.*:

(1) on what factual basis could defendant Wutoh have agreed "with the findings and the recommended disciplinary action"?

(2) on what factual basis could defendant Wutoh have agreed "with the findings but [disagreed] with the recommended disciplinary action"?

(3) on what factual basis could defendant Wutoh have disagreed "with the findings"?

(4) on what basis could defendant Wutoh have met the required due diligence requirement under the Policy if defendant Smiley's Report failed to make findings of material fact?;

(5) how could defendant Wutoh have evaluated defendant Smiley's Report if he could not assess the merits of the recommendation when no findings of material facts existed?;

(3) the absence of material facts and the inability of defendant Wutoh to objectively satisfy his due diligence requirement raises material issues of facts about what factual allegations did the two female students make against plaintiff on December 4, 2015?; and

(6) on what basis did he decide to sign the Report, thus adopting and ratifying it as the second highest ranking officers of defendant Howard?

Based on the highly crafted declaration of ¶ 22, defendants failed as a moving party to satisfy their initial burden of "identifying evidence that demonstrates the absence of any genuine issue of material fact." *Hersman*, 594 F.3d at 12.

Sixth, in ¶ 23, defendant Smiley declared that, "In the Notice of Findings, the University found 'that there is sufficient evidence to sustain a finding of Sexual Harassment in violation of the Title IX policy; . . ." Smiley's Declaration, ¶ 23.  This crafted declaration begs the question: (1) on what factual basis that must be material to the legal and factual predicate of sexual harassment can defendant Howard adopted the Notice of Findings as sufficient evidence?  (2) What constitutes evidence in defendant Howard's Title IX Office?  (3) Does defendant Howard understand the meaning of by the preponderance of the evidence?  (4) Does defendant Howard understand legal sufficiency on the question of whether the two female students made factual allegations that plaintiff engaged in sexual harassment on September 17, 2015?  (5) If defendant Smiley made no required findings of material fact on the question of whether plaintiff engaged in sexual harassment, and if defendant Wutoh could therefore not have met his required due diligence as set forth in the Policy, then on what arbitrary and capricious basis, anti-male bias, or deep institutional conflict of interest, did defendant Howard sustained the allegations of sexual harassment against plaintiff?

First, if defendant Howard and its officers, agents, and/or employee were arbitrary and capricious, then it would appear that defendant Howard, lacking any factual and objective bases to sustained the allegation of sexual harassment against plaintiff, has acted in violation of plaintiff's reasonable contractual expectation and entitlement to be free of arbitrary and capricious personnel decisions that affect the terms and conditions of his employment status. *See* 1993 FACULTY HANDBOOK § 2.8.2.

Second, if defendant Howard and its officers, agents, and/or employees were driven by anti-male bias when defendants Love and Smiley adopted and applied an unknown and unpublished subjective experience test, it would mean that defendant Smiley had fraudulently converted the allegations against plaintiff into a false flag Title IX complaint, had to deny him actual notice and proper notification of the factual allegations against him, had to gag plaintiff so that he could not adduce exculpatory testimony and documents, had to strongly identify with the two female students even though they were really angered by plaintiff's two peer-review articles, had to rely on the most biased and irrelevant exhibits to bolster the absence of any findings of material facts, and had to construct a Report that gave raise to an erroneous outcome, which meant that the entire investigative process was institutional infused by sex-based discrimination against plaintiff.

Finally, if defendant Howard and its officers, agents, and/or employees were driven by a deep institutional conflict of interest that arose out of and under the Jane Doe 5's sexual assault complaints that were mishandled by defendant Smiley, then defendant Howard and its officers, agents, and/or employees more than likely crafted a Notice of Findings that would serve the University's interest in having an answer for a federal jury and for the OCR, even though they knew, had reason to know, and/or in the ordinary course of due care should have known that plaintiff had not engaged in sexual harassment, and so defendant Howard used plaintiff to deal inappropriately with a conflict of interest.

In these questions, especially in reference to ¶ 23, it is clear that without regard to whether plaintiff had filed a Rule 56(d) and declaration that keenly satisfied *Convertino* and its jurisprudence, defendants' motion in the alternative must be denied or delayed, where they have failed as the moving party to proffer evidence of the absence of any genuine of material fact.

Given the foregoing, it is also clear that genuine issues of material fact still exist, and at the time of the filing of defendants' motion in the alternative for summary judgment, defendants were reasonably aware that they had not met the standard under *Celotex Corp.*, *Aetnas Cas. & Sur. Co.*, and *Anderson*.

### 3.    Defendants' Statement of Facts and Report.

In their motion in the alternative for summary judgment, defendant Smiley's declarations are woven into defendants'' Statement of Facts ("SOF").    Given the foregoing, defendant Smiley's crafted declarations raised relevant and genuine issues of material fact.    Together, plaintiff's First Amended Complaint, which established that genuine issues of material facts existed, defendant Smiley's crafted declaration, and defendants' SFO mitigate against this Court granting defendants' motion in the alternative for summary judgment.

For example, defendants stated that plaintiff alleged that "defendants (Howard University, Anthony K. Wutoh, Vanessa Love and Candi Smiley) breached the 1993 Faculty Handbook and Howard University's Title IX Policy in concluding that he had engaged in sexual harassment of students." SOF, ¶ 5, at 2, citing Am. Complaint at ¶¶ 254-270.    As crafted, defendants' SOF 5 is not correct.  Rather, plaintiff alleged that defendant Howard violated his employment contract as defined by and understood through the *1993 Faculty Handbook* when it issued the Notice that was unsupported by findings of material facts and by legally sufficient evidence, which made the Notice and the Disciplinary Action arbitrary and capricious, and which changed the terms and conditions of plaintiff's employment status.    Despite their SOF,

this allegation and pleading still remained a genuine issue of material fact.[2] *See* Defendants SOF, ¶¶ 5-23.

In support of their motion in the alternative, defendants proffered materials beyond plaintiff's pleadings. Specifically, the motion for summary judgment adduced defendant Smiley's Report and its Rationale. Defs' Motion for Sum. Judg., Ex. 1, at 2 of 274. In that Report, defendant Smiley set forth defendant Howard's Policy, which defines the preliminary factual and/or legal predicates for sexual harassment as "unwelcomed sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when. . . ." *Id.* at 3 of 274. Next, defendant Smiley set forth how a respondent's sex-based discriminatory conduct might actually or potentially harm the complaining students. For example, such a respondent might require the complaining students to submit to such conduct as an explicit or implicit basis for participating an academic program or to maintain their status in an academic program. Or, such a respondent's conduct had the purpose or effect of unreasonably interfering with a complaining student's right, privilege, etc. Or, respondent's conduct could be so pervasive or severe that it altered the educational environment and "has no reasonable relationship to the subject matter" of agency law. *Id.*

In order for defendants' motion for summary judgment to establish that no genuine issue of material fact existed, and so that they are entitled to judgment as a matter of law, the Report must establish the following facts. First, given the foregoing standard for sexual harassment, defendants' SOF must state that defendant Smiley's Report made findings of material facts that "the important [read, material and relevant] facts contained in an allegation are more likely true than not." Notice of Complaint, dated Dec. 17, 2015, at 2. Second, given the foregoing standard

---

[2]     Many of defendants' SOF are restatements of the defendant Howard's Policy, and unless such SOF are direct quotes, they were crafted to give effect to defendants' theory of the case, which thus do not address the specific factual context of the First Amended Complaint. *See* SOF, ¶¶ 6-23.

for sexual harassment, defendants' SOF must state that defendant Smiley's Report made findings of material facts that the complainants' "[important] facts violate one or more of the . . . standard[ for sexual harassment." *Id.*

Plainly stated, defendant Smiley's Report, which was ratified by defendant Howard when defendant Wutoh signed the Notice and the Disciplinary Action, must make findings of material facts and conclusion of law that would sustain the legally sufficiency of the allegations against plaintiff. Defendant Smiley's Report and Rationale did not make such findings and conclusions, and in apparent support of their alternative motion for summary judgment, defendants' SOF and defendant Smiley's declaration lacked these required findings and conclusions, too.

Defendants' SOF failed to state that defendant Smiley's Report made findings of material facts[3] and conclusions of law. Smiley found that Question 5, albeit sex and gender neutral, "is still an inappropriate question." SOF, at ¶ 57. However, Smiley never stated why, and this finding is not probative of a required element of sexual harassment. Smiley found that Question 5 elicited an inappropriate response "when students are discussing it in class." *Id.* However, Smiley never stated which in-class responses were inappropriate when none of the students actually revealed any personal grooming habits to plaintiff or their peers after plaintiff issued his caveat. *See* First Am. Compl., ¶¶ 185 and 186. Smiley "found" that students needed to rely on their personal knowledge to answer Question 5, and if so, then they had to reveal their personal grooming habits. SOF, at ¶ 57. By not having a working knowledge of Agency Law, and by not

---

[3]      In SOF ¶¶ 55-60, defendants use the following phrase: "Report of Investigation and Findings." However, at no time in the SOF, defendants never say "findings of material facts," and they do not say "conclusion of law." And given that DOE's rules and regulations have defined sexual harassment, which drew heavily from Title VII rule and regulations, and given that federal courts have premised decisions on the manner in which sexual harassment has been defined under Title IX, defendants must be fully aware that the indispensable legal predicates and elements of sexual harassment are: (1) unwelcomed sexual advances, (2) requests for sexual favors, and (3) other verbal or conduct of a sexual nature. By not using "findings of material facts" and "conclusions of law," defendants implicitly concede that they lack facts and substantive analyses under these required elements of a finding of sexual harassment.

giving weight only to what the complainant female students said, defendant Smiley engaged in a logical fallacy of post hoc ergo propter hoc.[4] However, plaintiff alleged that a student who was familiar with the elements of § 261 of RESTATEMENT (SECOND) AGENCY (1958) could analyze and answer Question 5, and none of students would have had to reveal anything about their personal grooming habits. *See* First Am. Compl., ¶¶ 41-43.

Moreover, defendants' SOF appears to rely on purported findings that are logically, substantively, and legally incorrect. Defendant Smiley states that plaintiff knew nothing about bikini waxes. SOF, ¶ 57. By not knowing about such waxes, defendant Smiley presumed that students would have to explain bikini waxes.[5] Defendant Smiley took that position because one of the complaining female students made this statement on December 4, 2015. *See* Interview Report of Complainant 1, n.d., at 14 of 274.[6] Not knowing is technically and logically irrelevant. In fact, after plaintiff issued the caveat, asking them not to rely on what they knew or believed about bikini waxes, no student thereafter default to personal experiences of grooming habits to answer Question 5. *See* First Am. Compl., ¶ 45. Fortunately, if complainant 1 felt that plaintiff put her in a position to rely on personal experience of groom habits to explain her answer to Question 5, it does not follow that her feelings constitute a material fact for establishing an element or legal predicate for sexual harassment.

---

[4]    Logical fallacy of "post hoc ergo propter hoc" means "after this, therefore because of this." Here is an example: "since event Y followed event X, therefore event Y was caused by event X." As applied, because complainant 1 felt that she had to rely on her personal experiences of grooming habit to answer the question or to defend her answer, then plaintiff's Question 5 and/or his post-exam feedback questions must have cause her to want to rely on her personal grooming habit to explain or to defend her answer to Question 5. *See* IRVING COPI, AN INTRODUCTION TO LOGIC 82-83 (14th ed. 1972).

[5]    Can a student who has never been a pilot/conductor or ridden on the TGV (Train à Grande Vitesse) determine at what speed it is traveling between stations A and B if the stations are 300 miles apart and the trip took 1 hour? Yes! The student would only need to know that speed is distance divided by time. Can only a student who had piloted/conducted or ridden on the TGV answer this question? No! Must the student default to actual experience to answer this question? No! The student cannot escape answering this question by declaring that the student once took such a train, and it took 1 hour and 30 minutes for the TGV to travel across the same actual distance, thus making the question wrong based on the student's actual experiences.

[6]    Complainant 1 stated "Which [the situation of the fact pattern] put the class in a position to have to explain to our professor that, that is not possible. It is not possible to fall asleep during a Brazilian wax, like."

Defendant Smiley nevertheless suggests that if complainant 1 felt like she had to rely on personal experiences to analyze Question 5, then complainant 1's feelings and KDO5 were material facts that constituted legally sufficient evidence to establish that plaintiff engaged sexual harassment.  Defendant Smiley stated:

> Further, Professor Robinson told the class he did not know much about bikini waxes which would put the class in the position of explaining bikini waxes.  This fact alone creates an uncomfortable situation for any male or female student.  I further *support* the idea that a Brazilian wax is of a sexual nature and it could cause students to be uncomfortable.  Per the Title IX Policy, KDO 5 does in fact, meet the requirements of Sexual Harassment.  SOF, at ¶ 57 (italic added).

In the foregoing quote, defendant Smiley stated that she supported the idea that Question 5 was of a sexual nature.  She did not say whose idea.  An idea is not a finding of material fact. In the Report, from which the above quote was taken, defendant Smiley premised her Rationale with the following statement:  "Professor Robinson is responsible for sexual harassment because he placed an inappropriate question of a sexual nature on a KDO (Knowledge, Demonstration, Opportunity) exam."  SOF, ¶ 57.  Unsurprisingly, defendant Smiley advanced this conclusion, even though she has not defined "sexual nature," which is a question of fact, and defendant Smiley wrongly assumed that this conclusions constituted a finding of material fact.

### 4.   Defendants' Motion in Opposition to Plaintiff Rule 56(d) Motion.

After reading defendants' motion in opposition, plaintiff does not have to satisfy local rule 7(m) because based on *Lynch* and Fed. R. Civ. Pro. 56(d), plaintiff can file a Rule 56(d) motion before he files his own statement of facts.  *See Lynch*, 217 F.Supp.3d at 227 (Rule 56(d) "establishes a mechanism for nonmovants who lack the facts they need to seek an opportunity to gather more information before responding to a motion for summary judgment.") (quoting *Grimes v. Dist. of Columbia*, 7894 F.3d 83, 92 (D.C. Cir. 2015).  In this case, plaintiff has had no opportunity for discovery.

Lastly, plaintiff is not engaged in a motion for reconsideration.   Rather, plaintiff has simply identified the presence of genuine issues of material facts based solely on what defendants have submitted to this Court.

## IV.    CONCLUSION

Plaintiff ask this Court to find that his Rule 56(d) motion, declaration, and this reply memorandum have shown sufficiently that defendants' pre-answer and pre-discovery motion in the alternative should not be granted or at the very least it should be delayed until the parties have had a reasonable opportunity for discovery.

Respectfully submitted,

By: 
Reginald Leamon Robinson
Plaintiff Pro Se


Reginald Leamon Robinson,
Plaintiff Pro Se
1904 Autumn Ridge Circle,
Silver Spring, MD  20906
(240) 876-7439
heru.hermes@gmail.com

23

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff Pro Se's Reply in Support

of his Rule 56(d) Motion and Declaration was served by email on November 5, 2018 and by

first-class mail, postage prepaid on 06 November 2018, upon:

Timothy F. McCormack, Partner
Ballard Spahr, LLP
300 East Lombard Street,
18th Floor
Baltimore, MD  21202-3268

Michelle McGeogh
Ballard Spahr, LLP
300 East Lombard Street,
18th Floor
Baltimore, MD  21202-3268

Maraya Pratt
Ballard Spahr, LLP
300 East Lombard Street,
18th Floor
Baltimore, MD  21202-3268

Reginald Leamon Robinson,
Plaintiff Pro Se
1904 Autumn Ridge Circle,
Silver Spring, MD  20906
(240) 876-7439
heru.hermes@gmail.com

Exhibit 1

Reginald Leamon Robinson
1904 Autumn Ridge Circle
Silver Spring, MD 20906

December 21, 2015

Candi N. Smiley, Esq.
Deputy Title IX Coordinator
Howard University
Washington, D.C. 20059

Re:     *Response to Title IX Allegations*

By memorandum letter ("Memo") dated December 17, 2015, you notified me that two students had alleged that I "engaged in conduct that, if true, may violate the Howard University Title IX (Student) Policy on Prohibited Sexual Harassment and Gender-Based Discrimination in Education Programs and Activities" ("Howard Title IX Policy" or "Policy"). Specifically, that Memo disclosed the following:

1. During the Fall of 2015 you committed acts of sexual harassment against several students

2. During the fall of 2015 you committed acts of gender-based discrimination against several students.

Upon reviewing your notification, I wrote to you by email, dated Thursday, December 17, 2015 at 2:28pm, and stated: "At this point, may I assume that without regard to the 2 classes that I taught in fall 2015, these allegations, which are lacking in specific facts, are the fullness of the Title IX violations that one or some students have alleged against me?" In this same email, I also wrote: "I know that your office must take any and all allegations seriously, and that you must therefore undertake due diligence. But I'm confused because without specific factual pleadings or allegations, I'm thus required to provide your office with every communication that I had with every students [sic] throughout the entire semester."

In response to that email, dated Thursday, December 17, 2015 at 2:36pm, you wrote: "As stated during our conference call, details as to the specifics of the allegations will be discussed during the interview process."

In response to your email of December 17, 2015 at 2:36pm, I replied by email, dated December 17, 2015 at 3:12pm: "I don't understand how I can adequately or specifically respond to the underlying facts of such damning allegations if I don't know factual pleadings." In paragraph 6 of this email, I wrote: "I don't get how the fact-finding (interview) process can be fair to me. I thought under the university's policy that I'm presumed innocent." In paragraph 7 of this email, I wrote: "Yet, this post-interview process, which takes place only after I've [been] given the broadest possible notice, doesn't treat the complainant(s) and respondents fairly and equally." In paragraph 9 of this email, I wrote: "Accordingly, this post-interview process burdens the complainant [sic] to prepare a fact-based response without having any sense of the alleged facts."

In the Memo, dated December 17, 2015, which cited to the Howard Title IX Policy, it stated: "As the 'subject' of the complaint, you have the right to be

1

informed of the complaint and to submit a written response to the charges. *That written response may be as long as you deem appropriate and should contain only those relevant statements and materials that you reasonably believe support your view of the important facts.*" *See* Memo, dated Dec. 17 2015, at 3 (italics added).

Based on your Memo, it is clear that your office *must* provide me with the actual complaint, in which these two students alleged that I engaged in sexual harassment and gender-based discrimination against several students. This proposition is further supported by the following language: "In addition to addressing the important facts in the allegations, *you may also provide a written analysis of whether, in your opinion, the facts support a finding that you have violated the standards contained in the policy.*" *See* Memo, dated Dec. 17, 2015 at 3 (italics added).

To date, I have not received any further information, which concerns the substance of the allegations. Rather, you have given me only the fact that two students have made allegations. For instance, you have not given me the students' identities or any details about them, or even when these acts were alleged to have occurred. In fact, I have not been provided *any* details of the alleged conduct from which one could discern whether it would in fact violate University Policy, or even whether it could possibly have occurred. I have essentially been provided no details other than the fact that allegations have been lodged. As a result, my written response to these allegations can only address "those relevant statements and *materials that you reasonably believe support your view of the important facts*" *if* I in fact have been given a copy of the full and complete complaint, in which these two students have raised these allegations. *Id.* Second, my response can only provide a "written analysis of whether, in your opinion, the facts support a finding that you have violated the standards contained in the Policy" if I in fact have been given a copy of the full and complete complaint. *Id.* Based on your Memo, by your office not giving me a copy of the full and complete complaint, I am effectively suffering procedural and substantive due process violations.

In addition to these violations, your office's unwillingness to provide me with a copy of the full and complete complaint also appears to violate the Howard Title IX Policy, which states as follows:

> The Respondent shall be informed, in writing, of the complaint and the allegations made against him or her. The Title IX Officer *will notify the Respondent of the allegations within 10 calendar days of receiving the complaint and speaking with the Complainant to learn more information,* and/or the person who experienced the action if the complaint was submitted by a third party, when necessary. *Upon receipt, the Respondent will then have an opportunity to submit a written response to the charges.* This response must be submitted to the Title IX Officer within 7 calendar days of receiving notice of the complaint.

Howard Title IX Policy, at 12 (italics added).

Furthermore, under the Howard Title IX Policy, the complaint of these two students must allege at a minimum the following: "When reporting such incidences, the Complainant should do his or her best to provide as much information as possible, including, but not limited to, the name of each person involved, the date and time of the incident, the location where the incident occurred, a specific description of what occurred and any other information on which the complaint is based." *Id.* at 11.

Based on this clear language of the Policy, you are *required* to notify me of the *substance* of the allegations after "speaking with the Complainant to learn more information," which ought to have been set forth by these two students. Given the foregoing Policy requirements for a complaint, I must know "as much information as possible," including but not limited to [1] "the name of each person involved," [2] the date and time of the incident," [3] the location where the incident occurred," [4] "a specific description of what occurred," and [5] "any other information on which the complaint is based." *Id.* Unfortunately, your office has refused to provide me with any of the foregoing. First, apart from our conference call, in which you simply gave me notice of the allegation, you did not give me any factual specifics of the allegations. Accordingly, I cannot respond factually within the meaning of the Memo or Policy because I do not know the factual specifics of the allegations. Second, since that conference call, you have not notified me of the *substance* of the allegations; rather, you have merely notified me of the *fact* of the allegations. It is therefore impossible for me to respond substantively in the second place within the meaning of the Memo and the Policy when I have been provided no substance in the first place.

Given the foregoing, your Memo of December 17, 2015 and your email reply to me of the same date belie these fundamental protections to which I am entitled. For instance, the Memo stated that in my response, I could name "specific individuals who may have relevant information that would tend to establish either the truth or falsity of the allegations, you are invited to submit those names . . . to us as soon as possible." *See* Memo, at 3. As I have noted, your Memo, which has a section entitled "Your Rights," stated that my written response should contain "those statements and materials" that support my view of material and relevant facts. *Id.* As I noted, your Memo stated that I could provide a written analysis showing that I had not violated the standards of the Policy. *Id.; id.* at 2. It is simply impossible for me to provide [1] my view of the "important facts," [2] my analysis of whether these facts show a violation of University Policy, or [3] the names of individuals who may know the truth when I do not know *anything* about the substance of the allegations.

Despite this apparent violation of my procedural and substantive due process rights under the Howard Title IX Policy, you have required me to respond in writing within seven (7) calendar days of December 17, 2015. Therefore, my response is: *I expressly and completely deny these allegations*. Not only are they false, they are both personally and professionally insulting.

Moreover, I understand that I am expected to participate in an interview, during which we will discuss these matters. However, I am concerned that you intend to conduct this interview without first providing any of the required information about the allegations. Such a procedure would *not only* violate basic notions of due process, to which this University, and particularly this law school, must subscribe, *but also* violate my rights under the Howard Title IX Policy.

Therefore, I now formally request that based on Howard Title IX Policy, you provide me with the complaint or any information filed by these two students that give me actual and substantive knowledge of material and relevant facts and substantive claims that directly bear on standards for sexual harassment and gender-based discrimination. *See* Memo, at 2. Such complaint and information should include *all* facts concerning the allegations, so that I may understand the charges against me, conduct a meaningful inquiry into their substance, and present a

reasoned defense of my professional conduct and reputation.  Under the Policy, I have a legal and professional right to such information.

However, because I am in the midst of grading, I respectfully request that you deliver this written notice and information to me *after* my grades have been submitted on Monday, December 21, 2015.  Furthermore, I request that the interview—to which I consent, and in which I intend to participate fully—not be scheduled until at least 15 business days after I have received *substantive* written notice of the allegations against me.  Anything less will violate my rights under the Howard Title IX Policy and will risk inalterably staining my profession standing not only at Howard University but also within legal academe.

I trust that you are endeavoring both to enforce an important University Policy and to protect the procedural and substantive rights of all concerned.  As the Howard Title IX Policy states, "the University *must use its best efforts to investigate all [such] matters.*"  Howard Title IX Policy, at 1.  Surely the University's "best efforts" to uncover the truth—which should at all times be our goal—must include informing me of the substance of the charges and ensuring that I have an opportunity to respond fully and meaningfully, thereby protecting the rights of all parties and the integrity of this University.  Under the aforementioned policy, the University's "best effort" must also include exercising its legal obligation to investigate all allegations "when the University knows with certainty or has reason to believe that sexual harassment or discrimination may have taken place." *Id.*  This foregoing policy statement presumes that your office has conducted a formal, good faith vetting of these allegations when you spoke with the two students, and, as a result, believes with certainty or reasonably believes that such prohibited actions may have taken place, which may violate the Policy. Accordingly, it must follow that based on the University's Policy, I am clearly entitled to actual and substantive notice of the alleged facts in the complaint, so that I can adequately write a response and analysis of the factual claims.

Based on your Memo and the Howard Title IX Policy, I am therefore certain that my reasonable request can be honored.  Nonetheless, if you dispute or are confused by anything in this letter, I strongly urge you to contact me *in writing* so that we may discuss your concerns.

If you have any questions or concerns, please get in touch with me at your earliest convenience.

Sincerely,

*Reginald L. Robinson*

Reginald Leamon Robinson
Professor of Law

4

Exhibit 2

Robinson, reginald 11/5/2018
For Educational Use Only

§ 5.01Notifications and Notice—In General, Restatement (Third) Of Agency § 5.01 (2006)

**Restatement (Third) Of Agency § 5.01 (2006)**

Restatement of the Law - Agency   October 2018 Update
Restatement (Third) of Agency
Chapter 5. Notifications and Notice

§ 5.01 Notifications and Notice—In General

Comment

Reporter's Notes

Case Citations - by Jurisdiction

   **(1) A notification is a manifestation that is made in the form required by agreement among parties or by applicable law, or in a reasonable manner in the absence of an agreement or an applicable law, with the intention of affecting the legal rights and duties of the notifier in relation to rights and duties of persons to whom the notification is given.**

   **(2) A notification given to or by an agent is effective as notification to or by the principal as stated in § 5.02.**

   **(3) A person has notice of a fact if the person knows the fact, has reason to know the fact, has received an effective notification of the fact, or should know the fact to fulfill a duty owed to another person.**

   **(4) Notice of a fact that an agent knows or has reason to know is imputed to the principal as stated in §§ 5.03 and 5.04.**

**Comment:**

*a. Scope and cross-references.* This Chapter covers the principles that determine when, in legal relations with third parties, a principal is charged with notice of facts that an agent knows or has reason to know and when a notification given or received by an agent is effective as to a principal. This section defines the terms "notice" and "notification." Comment *b* discusses the definition of notice as stated in § 1.04(4). Comment *c* discusses the definition of notification. Comment *d* discusses usage of these terms in contemporary statutes.

"Manifestation" is defined in § 1.03.

*b. "Notice" defined.* Within this Restatement, "notice" is used as an inclusive term. See § 1.04(4) for a definition of "notice." A person may acquire notice of a fact through several routes. A person has notice of a fact if: (1) the person has actual knowledge of the fact; (2) the person has reason to know a fact on the basis of an inference reasonably to be drawn from facts of which the person has actual knowledge; (3) an effective notification of the fact has been made to the person; (4) the person should know the fact to fulfill a duty owed to others; or (5) the law charges the person with the legal consequences of another person's knowledge of a fact or reason to know the fact or with the legal consequences of a notification made to another person. In ordinary usage, the meanings of these terms may overlap. For example, a person often "should know" what the person has "reason to know," such as the consequences that typically follow an action.

For purposes of this Restatement, it is important to distinguish between facts that a person has "reason to know" and facts that a person "should know." If an agent has no knowledge of a fact and no reason to know the fact on the basis of inferences reasonably to be drawn from facts known to the agent, the principal is not charged with notice of the fact. The fact, however,

Robinson, reginald 11/5/2018
For Educational Use Only

§ 5.01Notifications and Notice—In General, Restatement (Third) Of Agency § 5.01 (2006)

may be one that the agent should know in order to discharge a duty that the agent owes to the principal or to a third party, and the agent's failure to know that fact may cause the principal to breach a duty that the principal owes to the third party. The principal's breach of duty does not turn on imputing to the principal notice of a fact not known to the agent. For further discussion, see § 5.03, Comment *b*.

A person may have notice of a fact because the person has received an effective notification of it. Section 5.02 states when a notification received by an agent is effective as to the principal. If a manifestation is ineffective as a notification, a person may receive notice of a fact if, through the manifestation, the person acquires knowledge of the fact or reason to know it. See § 5.02, Comment *b*.

This Restatement does not use the terms "constructive knowledge" or "constructive notice." These terms vary in the meanings assigned to them. In the context of transactions in property, "constructive notice" is often contrasted with "actual notice"; to charge a person with actual notice of a fact means that the person has actual knowledge of the fact or actual knowledge of a fact from which the fact in question may be inferred, while to charge a person with constructive notice of a fact implies the existence of a rule of law that operates independently of any mental operation that the person has performed.

*c. "Notification" defined.* "Notification" is a narrower term than "notice." Agency law itself does not determine whether a notification is effective. Some manifestations that constitute notifications are made through public filings. For example, a person who files a lien does so to affect that person's rights against a property in relation to its owner and other persons. Other manifestations that constitute notifications are made through a communication to a specific person. For example, under U.C.C. § 2-602 a buyer must notify the seller seasonably to effect rejection of goods. An explicit agreement among parties, custom, or the law may prescribe a particular form that a manifestation must have to be effective as a notification, as well as the effect that it shall have. Insurance policies specify how and to whom an insured must give notice to the insurer of the occurrence of an event covered by the policy. Statutes and rules of civil procedure specify how litigants shall give notice to each other. A notification may be informative in content by relaying observable facts, as when an insured notifies an insurer of facts that may give rise to a claim under an insurance policy, or performative, as when a landlord delivers an eviction notice to a tenant. A notification may also be given to secure or document the existence of a relationship. In all cases, however, a person who gives a notification intends by so doing to affect that person's legal relations with persons to whom the notification is given, whether indirectly or generally, as in the case of the publicly filed lien, or directly, as when a tenant receives an eviction notice.

*d. Statutory usage.* Many contemporary statutes use the terms "notice" and "notification." For example, under U.C.C. § 1-202(a), a person has " 'notice' of a fact if the person has (1) actual knowledge of it; (2) has received a notice or notification of it; or (3) from all the facts and circumstances, has reason to know that it exists." Section 1-202(d) provides that a notice or notification is given "by taking such steps as may be reasonably required to inform the other in ordinary course, whether or not the person actually comes to know of it." Section 102 of the Uniform Partnership Act (1997) is comparable in substance.

**Reporter's Notes**

*a. Relationship to Restatement Second, Agency, and comparison with codifications.* This Chapter covers the topics in Restatement Second, Agency, Chapter 8, and § 9, Comments *f, g,* and *h.* Sections 9 and 268 ascribe the same meanings to "notice" and "notification" as does this Chapter. Restatement Second, Torts, ascribes the same substantive meanings to "reason to know" and "should know" as does this Chapter. See Restatement Second, Torts § 12, Comment *a* (noting that terms are used in same sense as in Restatement Second, Agency). Section 12 of Restatement Second, Torts, states that "reason to know" denotes "the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists." "Should know" denotes "the fact that a person of reasonable prudence and intelligence or of the superior intelligence of the actor would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists."

Robinson, reginald 11/5/2018
For Educational Use Only

§ 5.01Notifications and Notice—In General, Restatement (Third) Of Agency § 5.01 (2006)

Many codified treatments of agency include general statements of imputation doctrines. Under the Alabama Code "[a]s against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other." Ala. Code § 8-2-8 (2002 & Supp. 2004). To the same substantive effect are Cal. Civ. Code § 2332 (1985 & Supp. 2005); Mont. Code Ann. § 28-10-604 (1996 & Supp. 2004); N.D. Cent. Code § 3-03-05 (1987 & Supp. 2003); and S.D. Codified Laws § 59-6-5 (1993 & Supp. 2003). The Georgia Code provides that "[n]otice to the agent of any matter connected with his agency shall be notice to the principal." Ga. Code Ann. § 10-6-58 (1996 & Supp. 2004).

In contrast, the Louisiana Code does not contain a comparable provision deeming an agent's knowledge to be knowledge of a principal. The Code does require that an agent provide information to the principal. Article 3003 provides that "[a]t the request of the principal, or when the circumstances so require, the mandatary is bound to provide information and render an account of his performance of the mandate. The mandatary is bound to notify the principal, without delay, of the fulfillment of the mandate." La. Civ. Code art. 3003 (Supp. 2005).

On English law, see Francis M.B. Reynolds, Bowstead & Reynolds on Agency 438-451 (17th ed. 2001).

*b. "Notice" defined.* The definition of "notice" in subsection (3) corresponds in substance to Restatement Second, Agency § 9. However, Restatement Second, Agency § 9(3) states that a person "has notice of a fact if his agent … should know it…." Subsequent discussion in Restatement Second, Agency, reveals that the legal consequences that follow for a principal when an agent is ignorant of a fact that the agent should know to fulfill a duty do not turn on charging the principal with notice of the fact. According to Comment *b* to § 277, "[t]he principal is affected by information which the agent should have acquired if the principal has a contractual or other duty to third persons with respect to a matter entrusted to the agent. In such cases the principal is subject to liability for failing to act in the light of information which he should have acquired if he himself had done the work."

A synonym for "imputation" is "attribution." See, e.g., Restatement Third, The Law Governing Lawyers § 28 (stating that "[i]nformation imparted to a lawyer during and relating to the representation of a client is attributed to the client.…").

On various definitions of "constructive notice," "actual notice," "inquiry notice," and "constructive knowledge," see In re Ryan, 851 F.2d 502, 506-507 (1st Cir.1988) (applying Vermont law).

*c. "Notification" defined.* Restatement Second, Agency, does not use the term "manifestation" in connection with notifications. Section 9(2) states that "[a] person is given notification of a fact by another if the latter (a) informs him of the fact by adequate or specified means or of other facts from which he has reason to know or should know the facts: or (b) does an act which, under the rules applicable to the transaction, has the same effect on the legal relations of the parties as the acquisition of knowledge or reason to know."

English law does not develop as fully the distinction between, on the one hand, notifications, and, on the other hand, notice and knowledge. The notification concept has received judicial recognition in New Zealand. See Blackley v. National Mut. Life Ass'n of Australia, Ltd., [1972] N.Z.L.R. 1038, 1051 (per Turner, P.) (insured's spouse disclosed insured's medical condition to agent of life insurer whom insurer designated to receive disclosure; irrelevant to insured's rights against insurer that agent did not communicate information to insurer when insured had no reason to know that agent would conceal information from insurer; insured's spouse may be treated as giving notice close to that required by terms of policy).

An early synonym for "notification" was "absolute notice." See Warren A. Seavey, Notice Through an Agent, 65 U. Pa. L. Rev. 1, 2 (1916). As reprinted in 1949, the article acknowledges that in Restatement of Agency § 9, "notification" substitutes for "absolute notice." See Warren A. Seavey, Studies in Agency 30 n** (1949).

On happenstance as a circumstance under which knowledge may be acquired, see Peter Watts, Imputed Knowledge in Agency Law—Excising the Fraud Exception, 117 L.Q. Rev. 300, 307 (2001) (observing that "[i]n cases where lack of knowledge is crucial to the purchaser maintaining his acquisition free of a preceding adverse interest, the law is indifferent as

Robinson, reginald 11/5/2018
For Educational Use Only

§ 5.01Notifications and Notice—In General, Restatement (Third) Of Agency § 5.01 (2006)

to how the purchaser acquires actual knowledge. Knowledge, welcome and unwelcome, is apt to be acquired rather haphazardly. It may simply be a case of being in the wrong place at the wrong time: the purchaser's conscience is affected all the same.").

The performative-informative distinction is drawn by El Ajou v. Dollar Land Holdings plc [1994] 2 All E.R. 685, 703 (Ct. App.) (Hoffmann, L.J.). In *El Ajou*, Hoffmann L.J.'s opinion focuses on "communications" that an agent may have actual or apparent authority to receive. Not all "communications" constitute notifications as defined above because not all are given with the intention of thereby effecting a change in legal relations. Additionally, a principal's legal relations may be affected by an agent's knowledge that is not acquired through a "communication" made by the party with whom the agent deals on the principal's behalf.

*d. Statutory usage.*On "notice" and "notification" in contemporary statutes, see U.C.C. § 1-202(a) (person has " 'notice' of a fact if the person: (1) has actual knowledge of it; (2) has received a notice or notification of it; or (3) from all the facts and circumstances known to the person at the time in question, has reason to know that it exists."). A notice or notification is given under § 1-202(d) "by taking such steps as may be reasonably required to inform the other person in ordinary course, whether or not the other person actually comes to know of it." Under § 1-202(e), a notification is received by a person "when: (1) it comes to that person's attention; or (2) it is duly delivered in a form reasonable under the circumstances at the place of business through which the contract was made or at another location held out by that person as the place for receipt of such communications." Within § 1-202, subsection (a) is expressly subject to subsection (f), which provides that "[n]otice, knowledge, or a notice or notification received by an organization is effective for a particular transaction from the time it is brought to the attention of the individual conducting that transaction and, in any event, from the time it would have been brought to the individual's attention if the organization had exercised due diligence."

Section 102 of the Uniform Partnership Act (1997) is comparable to U.C.C. § 1-202 in substance. Additionally, § 102(f) provides that "[a] partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification by the partnership, except in the case of fraud in the partnership committed by or with the consent of that partner." Section 102 does not require that a notification be made in writing. See Unif. Partnership Act (1997) § 102, Comment.

The Uniform Partnership Act (1914) does not use "notification" as a distinct term. Section 3(2) provides that "[a] person has 'notice' of a fact within the meaning of this act when the person who claims the benefit of the notice: (a) States the fact to such person, or (b) Delivers through the mail, or by other means of communication, a written statement of the fact to such person or to a proper person at his place of business or residence." Under § 3(1), "[a] person has 'knowledge' of a fact within the meaning of this act not only when he has actual knowledge thereof, but also when he has knowledge of such other facts as in the circumstances shows bad faith." The English Partnership Act (1890) does not define these terms. Section 16 provides that "[n]otice to any partner who habitually acts in the partnership business of any matter relating to partnership affairs operates as notice to the partnership, except in the case of a fraud on the firm committed by or with the consent of the partner."

Corporation statutes do not make comparable use of the term "notification" but may require that written notice be given in stated circumstances. Compare Del. Code Ann., tit. 8, § 222(a) (1974 & Supp. 2004) (written notice of meeting shall be given when stockholders are required or permitted to take any action at a meeting) with Model Bus. Corp. Act § 1.41(a) (1999) ("notice" under Act must be in writing "unless oral notice is reasonable under the circumstances") and § 7.05(a) and (c) (shareholders must be notified of time, date, and place of annual or special meeting; notice of special meeting must include description of purpose for which meeting is called).

**Case Citations - by Jurisdiction**

C.A.2

Robinson, reginald 11/5/2018
For Educational Use Only

§ 5.01Notifications and Notice—In General, Restatement (Third) Of Agency § 5.01 (2006)

S.D.Tex.

## C.A.2

**C.A.2,** 2012. Subsec. (1) cit. in ftn. Spain sued ship-classification society and its subsidiaries, alleging that defendants were reckless in classifying as structurally sound an oil tanker that sank and released large quantities of oil that washed up on the Spanish coastline. Affirming the district court's grant of summary judgment for defendants, this court, inter alia, rejected plaintiff's argument that society was reckless in disregarding a fax allegedly sent to its subsidiary prior to the tanker's sinking by the vessel's then-master, reporting mechanical and structural problems aboard the tanker; plaintiff failed to introduce sufficient evidence that the fax would have served as a notification to subsidiary of conditions aboard the tanker, much less that subsidiary had actual or apparent authority to receive such a notification on behalf of society. Reino de Espaa v. American Bureau of Shipping, Inc., 691 F.3d 461, 474.

## S.D.Tex.

**S.D.Tex.**2011. Subsec. (3) quot. in sup. Oil company sued refining business, alleging that a spent catalyst distributor installed in business's refinery infringed upon company's patents. This court denied defendant's motion for summary judgment on the basis of laches, holding that defendant had not met its burden in establishing that the laches period began at the date it asserted, and thus the court could not analyze whether the delay resulted in material prejudice to defendant. The court reasoned that, although plaintiff's employee was provided with sufficient information such that he should have inquired into the nature of defendant's allegedly infringing activities, the court could not conclude at this stage in the proceedings whether that knowledge should have been imputed to plaintiff, because questions of material fact existed as to whether, among other things, that employee possessed a duty to familiarize himself with plaintiff's patents. Shell Global Solutions (US) Inc. v. RMS Engineering, Inc., 782 F.Supp.2d 317, 330.

Restatement of the Law - Agency © 1934-2018 American Law Institute. Reproduced with permission. Other editorial enhancements © Thomson Reuters.

End of Document                                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.