**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RECEIVED
Mail ...

DEC ↑ 8 2018

An... ...... .. ...sar, Clerk of Court
U.S. .......... .... nt. District of Colu....

...................................................x

REGINALD LEAMON ROBINSON,

        Pro Se Plaintiff,

-- against ---                No. 1:18-cv-00518-TNM

                          **JURY IS DEMANDED**

HOWARD UNIVERSITY, INC., ET AL.;      **RECEIVED**

        Defendants.            **DEC 17 2018**

...................................................x     Clerk, U.S. District and
                                      Bankruptcy Courts

## PLAINTIFF PRO SE'S MOTION FOR RECONSIDERATION

**COMES NOW** Pursuant to Federal Rule of Civil Procedure Rule 59(e), upon the accompanying memorandum of law dated December 4, 2018, Plaintiff Pro Se, Reginald Leamon Robinson, by and through himself, hereby moves this Court for reconsideration of its Opinion and Order issued on November 20, 2018 (the "Opinion" or "Op"), which held granted defendants' motion in the alternative for summary judgment and denied plaintiff's Rule 56(d) motion. *See* Memorandum Opinion, ECF No. 34; Order, ECF No. 35.

This motion is warranted to correct a clear error of law or to prevent manifest injustice. First, to correct a clear error of law, plaintiff respectfully requests that the Court reconsider its application of the rather stringent test under Rule 56 under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), *Celotex Corp., v. Catrett*, 477 U.S. 317 (1986), and their progeny. Second, to correct a clear error of law, plaintiff asks this Court to set forth the facts and procedural history, make clear the Rule 56(c) procedural safeguards on which it relied, and to limit its rulings simply to the present or absence of genuine disputes of material fact. Third, to prevent manifest injustice, plaintiff respectfully asks this Court to rule on the inadmissibility of character evidence

1

under Federal Rules of Evidence 404(a), which would mean that this Court cannot, as it did, rely on the defendant's Report of Investigation not only because it failed to make findings of material fact and conclusions, but also because it subjective conclusions flowed inexorably from inadmissible character evidence.

Lastly, in redressing the manifest injustice, plaintiff respectfully asks this Court to clarify on which why it acted as a trier of fact, adopting defendants' motion as if plaintiff had conceded, when the inadmissible character evidence of defendant Smiley's Report created genuine disputes of material facts.

Respectfully submitted

/s/ Reginald Leamon Robinson

Reginald Leamon Robinson
Plaintiff Pro Se
1904 Autumn Ridge Circle
Silver Spring, MD 20906
Phone: 240-876-7439
Email: heru.hermes@gmail.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

...................................................x

REGINALD LEAMON ROBINSON,

                Pro Se Plaintiff,

-- against ---                            No. 1:18-cv-00518-TNM

                                     **JURY IS DEMANDED**

HOWARD UNIVERSITY, INC., ET AL.;

                Defendants.

...................................................x

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION BY PLAINTIFF PRO SE, REGINALD LEAMON ROBINSON

Reginald Leamon Robinson
*Plaintiff Pro Se*
1904 Autumn Ridge Circle
Silver Spring, MD 20906
Phone: 240-876-7439
Email: heru.hermes@gmail.com

## PRELIMINARY STATEMENT

Plaintiff Pro Se, Reginald Leamon Robinson, respectfully seeks reconsideration of this Court's November 20, 2018 Opinion and Order (the "Opinion" or "Op"), in which the Court granted defendants' motion in the alternative for summary judgment and denied plaintiff's Rule 56(d) motion. *See* Opinion, ECF No. 34; Order, ECF No. 35.[1]

This is a case about a University that grossly mishandled a complaint by two female students who felt deeply offended by a professor's academic writings, his casual professional demeanor, and discomfort about his test question, which was designed to test the liability of a principal for the fraud of its agent under § 261 of *Restatement (Second) Agency*. And while the hypothetical was a sex and gender neutral quiz by plaintiff, the University unnecessarily elevated the complaint into an unsubstantiated finding of sexual harassment. Furthermore, when it was confronted with the fact that absolutely no evidence in law or logic existed to conclude that plaintiff's conduct constituted sexual harassment, the University, impenitent, refused to correct the record, thereby causing unnecessary harm to plaintiff's career and reputation, and necessitating this lawsuit.

In his amended complaint, plaintiff sought relief under the following claims: (1) breach of contract; (2) violation of the implied duty of good faith and fair dealing; (3) Title VII sex-based discrimination; (4) Title IX's erroneous outcome theory; (5) Title IX's deliberate indifference theory; (6) Title IX's retaliation; (7) intentional infliction of emotional distress; (8)

---

[1] While Rule 59(e) of the Federal Rules of Civil Procedure does not explicitly provide for motions "for reconsideration," such motions are routine in federal civil practice, including in this Circuit. *See, e.g., Emory v. Secretary of Navy*, 819 F.2d 291, 293 (D.C. Cir. 1987) (addressing a Rule 59(e) motion to reconsider and explaining that courts "routinely construe[] papers captioned 'motion to reconsider' as a motion to alter or amend the judgment rule Rule 59(e)"); *see also Middlebrooks v. Godwin Corp.*, 279 F.R.D. 8, 11 n.3 (D.D.C. 2011) ("A motion for reconsideration is generally treated as a Fed. R. Civ. P 59(e) motion if it is filed within 28 days of entry of the challenged order . . . ."); *Wannall v. Honeywell Int'l Inc.*, 292 F.R.D. 26, 31-32 (D.D.C. 2013), *aff'd sub nom. Wannall v. Honeywell, Inc.*, 775 F.3d 425 (D.C. Cir. 2014) (noting that motions to alter or amend a judgment under Rule 59(e), as amended, this motion is filed within 28 days of the relevant Opinion and Order. See Fed. R. Civ. P. 59(e); *cf.* Fed. R. App. P. 4(a)(4)(A)(iv) (stating that the time to file a notice of appeal runs from entry of an order disposing of a timely filed Rule 59 motion).

negligent infliction of emotional distress; (9) negligence; and (10) injunctive relief and declaratory judgment. By clear error of law and as manifest injustice, this Court dismissed plaintiff's claims.

In a clear error of law, this Court, acting as a trier of fact and impermissibly relying on defendants' Report of Investigation ("Report"), weighed evidence and plaintiff's credibility when it granted defendants' motion for summary judgment. As a clear example of manifest injustice, this Court, ignoring plaintiff's fact pleading and adopting solely defendants' statements, cited to inadmissible character evidence, even though such evidence cannot be admitted in a civil proceeding. Again, as a clear example of manifest injustice, this Court erred when it inexplicably denied plaintiff's Rule 56(d) motion, even though he was *pro se* and had not had an opportunity to adduce affidavit, declaration, or other evidence of a material dispute. Lastly, as a clear example of manifest injustice, this Court ignored plaintiff's fact pleading, which must be taken as true, correct, and believed, drawing all inferences in plaintiff's favor, that on July 12, 2017, defendant Wutoh acknowledged in the presence of GT Hunt, plaintiff's former counsel, that plaintiff had not violated the University's Title IX Policy.

For the foregoing reasons, plaintiff respectively asks this Court to correct its clear errors of law and to undo the manifest injustice in the Opinion.

## ARGUMENT

### I.      Reconsideration is Warranted.

Reconsideration is appropriate where there exists "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotations and citations omitted). Reconsideration is also appropriate, where the court fails to follow the

5

strictures of Rule 56(c), and where the court thus invades the proper province of the jury. *See generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), *Celotex Corp., v. Catrett*, 477 U.S. 317 (1986), and their progeny. Manifest injustice or clear error can include "legal errors the court made." *Zyko v. Dep't of Defense*, 180 F.Supp.2d 89, 91 (D.D.C. 2001), or conclusion "premised on factual error," *Ali v. Carnegie Institution of Washington*, 309 F.R.D. 77, 83 (D.D.C. 2015) (citing *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)). *See also Hammon v. Kempthorne*, 448 F.Supp.2d 114, 118 (D.D.C. 2006) (observing that Rule 59(e) motions "are intended to permit the court to correct errors of fact appearing on the face of the record, or errors in law") (internal quotations and citations omitted). For each of the following reasons, reconsideration is warranted here.

## II. The Court erred in granting defendants' motion in the alternative for summary judgment and in denying plaintiff *Pro Se*'s Rule 56(d) motion, where defendants failed to meet their heavy burden that no genuine disputes of material fact existed.

In its Opinion, this Court identifies the correct legal framework for determining whether defendants would be entitled to summary judgment. (Op. 6) Defendants moved for a 12(b)(6) ruling, but they included material beyond the pleadings. This Court correctly stated that it must treat defendants' motion under Rule 56. *See* Fed. P. Civ. P. 56. In converting defendants' 12(b)(6) motion to one under Rule 56, the Court correctly stated that the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(b)(6); Kurtis A. Kemper, *Necessity and Sufficiency of Notice of Court's Decision to Convert Motion to Dismiss Under Rule 12(b)(6) of Federal Rules of Civil Procedure*, 143 A.L.R. FED. 455, *1 (2018). This Court did not give plaintiff conversion notice and a reasonable opportunity to present pertinent material. After filing a response of their 12(b)(6) motion, plaintiff sought a delay under Rule 56(d). Where defendants seek a 56 motion, this Court need not give a

conversion notice if the parties have had a reasonable opportunity to respond. *Proctor v. DC*, 74 F.Supp.3d 436, 448 (D.D.C. 2014).

Before converting to a Rule 56 motion, this Court in using its discretion must ensure fairness to the parties. *Id.* Such conversion would not be fair to the nonmoving party if he is not represented by counsel, and if he has not submitted exhibits with evidence. *Id.*, citing *Hamilton v. Geithner*, 743 F.Supp.2d 1, 8 (D.D.C. 2010), *aff'd*, 666 F.3d 1344 (D.C. Cir. 2012). In this case, plaintiff filed *pro se*; he did not have access to evidence on which to base a showing of genuine issues of material fact.

In assessing the material beyond the pleadings, this Court must determine whether it is comprehensive, and "will enable a rational determination on a summary judgment movement." *Id.* Fairness to the parties, especially to the nonmoving party, means "ample time afforded the parties to access sources of proof." *Id.* Defendants' material beyond the pleadings, specifically defendant Smiley's Report of Investigation ("Report"), was not comprehensive. For example, the Report's very core rests on two legal questions, both of which are questions of fact for a jury. First, did the two female students file sexual harassment complaints within the meaning of Title IX and pursuant to defendant Howard University's Title IX Policy ("Policy")? Second, assuming defendant Smiley could serve a Notice of Complaint pursuant to its Policy on plaintiff, did she make the required findings of material fact and conclusions on the elements of *quid pro quo* sexual harassment and hostile environment sexual harassment when she concluded that sufficient evidence existed to sustain the allegation of sexual harassment? Defendant Smiley at the very least failed to make findings of material facts on these two jury-based questions, and this Court, impermissibly stepping beyond Rule 56(c)'s safeguards, relied heavily on the Report

as a substantive basis to determine that as a matter of law, plaintiff's claims lacked merit.  Op. 14.

Under *Proctor*, defendants' material lacks comprehensibility.  First, this material lacked the required findings of material facts and conclusions.  Am. Compl., ¶¶ 61-65.  Under *Anderson* and *Celotex*, a "materiality determination rests on the substantive law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp., v. Catrett*, 477 U.S. 317, 325 (1986).  That is, the substantive law tells the parties and trier of fact "which facts are critical and which facts are irrelevant that governs."  *Id.*  Under a *quid pro quo* sexual harassment claim, the material facts are: (1) the rejection of sexual advances; (2) a tangible school-related consequence; and (3) a causal connection between the two.  *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 89 (2d Cir. 2011).  Under a hostile environment sexual harassment claim, the critical facts are whether the two female students "subjectively perceived the environment to be hostile or abusive and that the environment *objectively* was hostile or abusive."  *Id.*, citing *Hayut v. State Univ. of N.Y.*, 352 f.3d 733, 745 (2d Cir. 2003) (italics added).  By hostile or abusive, the *Papelino* court stated that the classroom must be "permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [their] educational environment."  *Id.*, citing *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999).

Given *Anderson*, *Celotex*, *Proctor*, and *Papelino*, defendants' Report cannot satisfy the materiality and comprehensibility tests. Materiality requires findings on sex activities as *quid pro quo.* The Report, which contained a Report of Interviews ("Interviews"), made no such findings. Am. Compl. ¶¶ 61-64. During the Interviews, neither female student alleged that plaintiff made unwelcomed sexual advances or requests for sexual favors, which they rejected.  *Id.* ¶¶ 88-90.

8

Second, neither stated that plaintiff had assigned tangible benefits or harm to his advances or favors seeking. Third, no causality element can be factually found. Without materiality findings, the Report lacked comprehensibility. Am. Compl. ¶ 64.

Likewise, the Report lacked materiality and comprehensibility on a hostile environment claim. *See Proctor*, 74 F.Supp.3d at 448. First, the two students who brought the claim stated that they subjectively felt uncomfortable; they thought the hypo was inappropriate; and one said that she left the classroom due to the discussion. They also subjectively felt they had to disclose their personal grooming habits, if they wanted to defend their choice on Question 5. Before any student exposed such habits, plaintiff told them not to rely on what they knew or thought they knew. After plaintiff's caveat, none of the students disclosed anything personal, and they engaged rule analysis. In his Amended Complaint, plaintiff's fact pleadings clearly showed that knowledge of § 261 was sufficient to answer Question 5. Am. Compl. ¶ 42(a)-(j). Second, the Report failed to make objective findings of material fact on hostile environment. In the Report, Smiley made a conclusory statement that Question 5 caused the two students to become uncomfortable. She also stated that "at least one student left the classroom." Defs.' Mot. Sum. J., Ex. 1, at 4 of 274. With respect to the one student who left the classroom, Smiley stated that if that student felt extremely uncomfortable, then it follows that "Such conduct [i.e., unwelcomed sexual advances and requests for sexual favors] has the purpose or affect of unreasonably interfering with a student's educational right, privilege, advantage or opportunity." *Id.* at 4-5 of 274.   However, Smiley's Report failed to make any material finding of "extremely uncomfortable," and it failed identify any specific conduct by the plaintiff that would objectively constitute a hostile environment within the meaning of Title IX and pursuant to the Policy. *See Oncale v Sundowner Offshore Ser. Inc.*, 523 U.S. 75, 81 (1998) ("Whatever evidentiary route the

plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* ... because of ... sex."). Accordingly, without findings of material fact under either *quid pro quo* or hostile environment sexual harassment, this Report lacked comprehensibility for summary judgment.

Moreover, the Report's conclusions lacked comprehensibility under *Proctor*. In its Opinion, this Court stated that it would rely on the Report, which in the Court's erroneous estimation was "replete with supportive factual findings." Op. 15, citing Report, at 3-10. In fact, the Report's conclusions are subjective and based on inadmissible character evidence. For example, Smiley stated that the "cases from the chapter that Professor Robinson was teaching do not in any way seem to connect to the hypothetical in the KDO." Defs.' Mot. Sum. J., Ex. 1, at 5 of 274. Smiley's statement ignored a direct connection between testing § 261 in a tortious touching hypothetical and his Question 5. That connection was presented in Fedje's article, which Smiley read, and which cited to and discussed *Bowman*, where a federal circuit court held that the principal could be liable under § 261 after its agent, cloaked with apparent authority, engaged in misrepresentations that induced the plaintiff to permit the agent to tortiously touch her and her children. Defs.' Mot. Sum. Judg., Ex. 1, Ex. E., at 155, 141-170 of 274. After reading *Bowman*, plaintiff considered testing the elements of § 261 through a tortious touching hypothetical. Under Rule 56, in determining materiality and comprehensibility, this Court must accept plaintiff's pleadings as true, believed, and correct, drawing all inferences in his favor. Then under *Anderson* and *Celotex*, this Court must independently determine if defendants have met their heavy burden on material facts.

The Report's conclusions also were infected with inadmissible character evidence. *See Bryant v. City of Memphis*, 644 Fed.Appx. 381, 386 (6th Cir. 2016) (excluding as inadmissible

under Federal Rules of Evidence 404(a) character traits to show that the person had a propensity to act in accordance with that trait.); *Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013). In determining whether defendants have met their initial heavy burden, this Court cannot rely on inadmissible character evidence. The Federal Rules of Evidence provide: "Evidence of a person's character or character traits is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *Id.* According to the Advisory Notes for 404(a), "Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." *Id.* at *3.

Under Rule 404(a), this Court erred when it relied on inadmissible character evidence contained in the Report to find that defendants' had met their initial heavy burden. In finding for defendants, this Court cited to inadmissible character evidence in the Report. *Cf. Young v. HUD*, 706 F.3d 1372, 1379 (D.C. Cir. 2013) (applying 404(a) to exclude character evidence at Board hearing). In rejecting plaintiff's material pleadings that the Report made immaterial findings, this Court countered by declaring that the Report was "replete with supporting factual findings." Op. 15. Yet, this Court did not say: "supporting material findings." *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 325. In support of its declaration, this Court cited the following conclusion approvingly: "Ms. Smiley concluded, for example, that Professor Robinson 'exhibited a past pattern of behavior that makes it more likely than not[] that he has created hypotheticals of a sexual nature that made students uncomfortable." Op. 15., citing Defs. Mot. Sum. Judg., Ex. 1, 8 of 274. Then, this Court, relying directly on inadmissible character

evidence, cited plaintiff's 20-year old inappropriate emails, a comment by the former associate dean, and statement about one of plaintiff's exam questions. Op. 15. Smiley drew this conclusion from the following: his unprofessionalism in written publications "contain[s] very contentious inflammatory views regarding black women and black mothers." (8 of 274); past behaviors of remarks and emails of explicit sexual jokes sent to faculty are "certainly relevant to the Title IX behavior that was complained about." *Id.*. Based on the foregoing, Smiley, now relying on character evidence, stated: "It stands to reason that if Professor Robinson exhibited behavior that was inappropriate with faculty members, that the same behavior could also be exhibited with his students." *Id.* at 9 of 274.

Smiley draws a strong causal relationship between the hearsay and events of plaintiff's past and the students' purported allegations by stating: "This pattern of behavior adds credibility to the allegations that Professor Robinson was inappropriate with his students." *Id.* Finally, Smiley causally linked the character evidence and purported allegations to Title IX's preponderance of the evidence standard: this pattern of behavior "also adds to the more likely than not standard required by the OCR for a finding of a Title IX violation." *Id.*

None of these conclusions satisfies *Anderson*'s and *Celotex*'s evaluation for material facts, and they do not comply with *Proctor*'s fairness and comprehensibility, on which this Court could rely to decide a summary judgment motion without permitting the nonmoving party to have a reasonable opportunity for discovery, so that it can adduce a genuine dispute of material fact. This proposition suggests that this Court erred in converting defendants' motion to dismiss under 12(b)(6) into a Rule 56 motion. *Colbert v. Potter*, 471 F.3d158, 164-165 (D.C. Cir. 2006); *Flynn v. Tiede-Zoeller, Inc.*, 412 F.Supp.2d 46, 50 (D.D.C. 2006). Given the foregoing, the Report not only failed to make the required findings of material facts, but also drew conclusions

12

that were contaminated with inadmissible character evidence and biased towards the plaintiff because the investigator was offended by plaintiff's scholarly work. In this way, this Court abused its discretion by explicitly relying on this Report to conclude that defendants had met their heavy burden that no genuine disputes of material facts exist, and that they are entitled to summary judgment as a matter of law.

**III.    This Court erred, creating clear error of law and manifest injustice, when it inexplicably ignored the pleadings and relied on the report's inadmissible character evidence in determining to grant defendants' motion in the alternative for summary judgment.**

This Court improperly relied on character evidence. By so doing, a court or trier of fact might overlook the particular situation, ignore evidence, create clear errors of law, and engage in manifest injustice. For this reason, the Federal Rules of Evidence prohibits its use in civil proceedings. *See* Fed. R. Evid. 404(a).

Inadmissible character evidence affected this Court's opinion. For example, the Court described plaintiff's conduct as "poor choices." *See* Op. 1. This Court also determined that plaintiff remains "impenitent." *Id.* Viewing plaintiff's pleadings only through defendants' Report, this Court decided that defendant Howard had justly punished him, and he has refused to accept a simple, confidential reprimand. *See* Op. 1. In so saying, this Court has weighed evidence and determined credibility, leading it not to see that an unsubstantiated finding of sexual harassment is career destroying, and causing it not to recall that defendant Howard sent the unsubstantiated Notice of Finding and Disciplinary Action to the two female students. Op. 4.

In short, this Court erred when it looked at plaintiff's claims and claims through defendant Smiley's Report. Op. 14. When it did, this Court invaded the province of the jury—weighing evidence, and determining credibility. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). And when it did, this Court failed to evaluate defendants' initial heavy burden through

plaintiff's pleadings, which it must accept as true, correct, and believed, while drawing all inferences in plaintiff's favor.  *Id.*.

At summary judgment, a court may not undertake the role of a reasonable jury.  As the D.C. Circuit stated in *Arrington*, albeit "a jury might ultimately decide to credit the version of the events as described by defendants over that offered by the plaintiff, 'this is not a basis upon which a court may rest the granting a motion for summary judgment.'"  *Arrington v. U.S.*, 473 F.3d 329, 335 (D.C. Cir. 2006).  At summary judgment, a court cannot "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*, citing *Anderson*, 477 U.S. at 249 (same).  In determining summary judgment, "a court must view all the evidence in the light most favorable to the nonmoving party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

Once distracted by inadmissible character evidence, this Court sought to resolve the disputed issues of fact by ignoring plaintiff's pleadings and other evident of a material dispute. As the D.C. Circuit Court stated, "[n]either the District Court nor this court can conclude that appellee's story is truthful and appellant's story is a fabrication, at least not if all of the evidence is viewed in the light most favorable to appellant as required by Federal Rule of Civil Procedure 56(c)."  *Arrington*, 473 F.3d at 338.    The Circuit Court further stated, "'[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge' ruling on a motion for summary judgment.  *Id.*, citing *Anderson*, 477 U.S. at 255.

Given the standard in *Anderson* and *Arrington*, it is a clear error of law or manifest injustice for this Court to grant defendants' summary judgment motion, where inadmissible character evidence had made plaintiff less worthy in the Court's eyes. Viewing plaintiff as a

"impenitent," this Court ignored plaintiff's pleadings, which it must adopt as true, correct, and believed for the purposes of a summary judgment motion.    Under *Anderson*, *Arrington*, and Rule 56(c)'s safeguards, the following pleadings must be accepted as true, correct, and believed:

First, defendant Howard breached plaintiff's employment contract by issuing the unsubstantiated finding of sexual harassment. That finding breached at the very least plaintiff's reasonable contractual expectation to be free from arbitrary and capricious personnel actions. Am. Compl., ¶¶ 21-27, 48-64; 1993 FACULTY HANDBOOK, § 2.8.2., at 2-62.  In its motions and filings, defendants have never asserted that defendant Smiley's Report had made findings of material facts and conclusion. *See* Defs.' Mot. Sum. Judg., SOF; Smiley's Declaration.  In the Rationale, Smiley used the following words, none of which indicates a proper finding of material fact, *viz.*, "I contend" (Report, at 5 of 274), "I assert" (*Id*. at 6 of 274), "I argue" (*Id*. at 7 of 274).

Second, defendant Howard University violated the implied duty of good faith and fair dealing by applying its Policy, including relying on unpublished rules and regulations like the subjective experience test, in a manner that failed to the "promote the decency, fairness, and/or reasonableness of Plaintiff's contractual expectations." *Id*., ¶ 23, citing *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (DC CA 2006).  Plaintiff pled that defendant Smiley never gave him actual notice of the factual allegations against him.  Defendants never contradicted plaintiff's fact pleading that defendant Smiley relied on the subjective experience test.  Defendants never proffered an independent basis on which defendant Smiley made her unsubstantiated findings.

Third, defendant Howard's findings constituted sex-based discrimination.  Am. Compl. ¶¶ 304-316.  The Findings lacked any material findings of sexual harassment.  *Id*. ¶ 188-200. Likewise, the Report, on which the Findings must rely, not only lacked such findings, but also was replete with gender bias.  The Report also relied exclusively on inadmissible character

evidence. In the Report, the two female complainants were motivated by odious feelings toward plaintiff as a man and as scholar who published two articles they viewed as misogynous. *Id.* ¶ 91. They wanted defendant Howard to punish plaintiff for published ideas of black mothers (*Id.* ¶¶ 92. 95, 97), who found his language "personally offensive." Defs.' Mot. Sum. Judg., Ex. 1, at 14 of 274 Defendant Smiley identified with the two female students. *See, e.g., id.* at 4 of 274 ("the students were obligated to discuss this question in class which would require a student: whether male or female, to discuss their personal intimate knowledge or experiences of bikini waxes."); *id.* at 8 of 274 ("(Professor Robinson's publications) contain very contentious inflammatory views regarding black women and black mothers."). In her Rationale, she adopted the language of the two female complaining students. Defendant Smiley relied on an unpublished and unknown evaluation standard called the subjective experience test, which believes the female victim. Defendants have not proffered any independent or institutional justification for its unsubstantiated findings against plaintiff. Defendant Howard cannot adduce the Report, which is tainted by inadmissible character evidence, to support the Findings or to proffer a legitimate institutional reason for its Findings. These fact-pleadings have not been contradicted by defendants, and they are genuine disputes of material facts.

Fourth, defendant Howard's unsubstantiated Finding was erroneous outcome under Title IX. Defendant Smiley's Report, including the Interviews, contained gender-bias language. Smiley relied on the subjective experience test to determine conclusively whether plaintiff violated the Policy. Howard has not denied that Smiley relied on this test. *See generally* Defs. Mot. Sum. Judg., Statement of Facts; Smiley's Declaration. Upon information and belief, defendant Smiley did not focus her investigation on material facts of sexual harassment. Based on the gender-bias language in the Report, neither Howard nor Smiley has proffered an

independent or institutional justification for the unsubstantiated findings. Smiley, having strong biases, constructed the narrative of a finding of sexual harassment, which was unsubstantiated. This fact-pleading has not been contradicted by defendants, and it is a genuine dispute of material fact.

Fifth, defendant Howard was deliberately indifferent to plaintiff's innocence, after he and others like FGC, FIRE, and presumably the ABA put the University's leadership on notice that the Finding of sexual harassment was unsubstantiated, and the leadership did not take corrective action, even though they had institutional authority to do so. On May 25, 2017, plaintiff sent copies of his appeal memorandum to President Frederick and Chair of the Board of Trustees, Mr. Stacey Mobley. Am. Compl. ¶ 78. This fact-pleading has not been contradicted by defendants, and it is a genuine dispute of material fact.

Sixth, after filing his grievance complaint, the Faculty Grievance Commission made a preliminary finding that plaintiff's grievance "merited detailed investigation," stating as one of four reasons for this finding that "the Notice was arbitrary and capricious."[2] Am. Compl. ¶81. This fact pleading has not been contradicted by defendants, and it is a genuine dispute of material fact.

Seventh, as a result of the FGC's preliminary finding, the *1993 Faculty Handbook* required the parties to engage in mandatory mediation under § 2.8.3.3. *Id.* ¶ 82. Such mediations

---

[2] In the Opinion, this Court stated that plaintiff had sent documents to FIRE, and he had filed a grievance with the FGC. Op. 4. Curiously, the Court omitted that plaintiff filed a complaint with the ABA, the accreditation organization to Howard University School of Law, and after an investigation, the Law School has not enforced any of the Disciplinary Actions against plaintiff. Am. Compl. ¶¶ 336, 340. With regard to FIRE and the FGC, the Court incorrectly stated that plaintiff's "efforts failed." Op. 4. That is not true. FIRE agreed with plaintiff. In June and December 2017, FIRE wrote two letters to Howard University's leadership, and stated that plaintiff's Question 5 fell squarely within Howard University's academic freedom and freedom of expression. FIRE asked Howard University to vacate the finding, or it would file suit.

 Likewise, the Court noted that plaintiff had filed a complaint with the EEOC, and then the Court, knowing better, created the impression that the EEOC had dismissed his complaint without issuing him a Right to Sue Letter. Op. 4-5. It is unclear to plaintiff why this Court appears inconsistent of the record plaintiff has built in this case. It is equally unclear why this Court has given short shrift to plaintiff's fact pleadings, when given the procedural posture of this case, the plaintiff's material pleadings must be taken as true, correct, and believed.

were not confidential or privileged. On July 12, 2017, at this mediation, and in the presence of Mr. G.T. Hunt, plaintiff's former legal counsel, defendant Wutoh acknowledged that plaintiff had not violated the Policy. *Id.* ¶ 87. This fact pleading has not been contradicted by defendants, and it is a genuine dispute of material fact.

Eighth, at the interview with defendant Smiley on December 4, 2015, the two female complainants stated that they were principally motivated by anger at plaintiff's two peer-reviewed articles, believing that he either encourage violence or misogyny against black women or black mothers. *Id.* ¶¶ 95, 97. They were "overly uncomfortable" by plaintiff's casual professional demeanor. *Id.* ¶ 94. This fact-pleading has not been contradicted by defendants, and it is a genuine dispute of material fact.

Ninth, on September 17, 2015, in answering Question 5, none of the 34 students had to reveal personal information. They needed to know the elements of § 261 to provide a correct, complete analysis of the hypothetical. Am. Compl. ¶ 42. In fact, not one student revealed personal grooming habits. *Id.* ¶ 43. During the feedback, one student challenged the hypothetical by asserting that "T would not sleep." *Id.* ¶ 45. In response, without any knowledge of any student's subjective belief, plaintiff halted the feedback and asked students not to rely on what they knew or believed they knew. *Id.*, citing De Cruise's Affidavit, Ex. 7. After issuing this caveat, "No student did offer personal grooming habits." *Id.* Ignoring the plaintiff's pleadings, this Court relied on defendant Smiley's Report, which was contaminated by inadmissible character evidence, to state conclusively that plaintiff's quiz required his students to reveal personal grooming habits. Op. 17 ("Ms. Smiley's Report, for instance, noted that Mr. Robinson's quiz question 'creates an uncomfortable situation for any male or female student,' as it may require students 'to disclose intimate details' about their personal grooming habits.").

**IV.    The Court erred when it effectively treated defendants' motion in the alternative for summary judgment as "conceded."**

This Court cannot treat defendants' motion for summary judgment "as conceded," simply because plaintiff failed to file a responsive motion, but instead filed a Rule 56(d) motion. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503 (D.C. Cir. 2016). In that motion, plaintiff asked this Court either to reject defendants' motion as premature or to delay any ruling thereon until 30 days after the close of discovery. This Court denied plaintiff's first motion as nonconforming, and second as unnecessary. Pl.'s Rule 56(d) Mot., Doc. No. 22. Per Federal Rule of Civil Procedure 56(a), this Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*, at 505, citing Fed. R. Civ. P. 56(a). Under the D.D.C. Local R. 7(b), this Court has "the discretion to treat a motion 'as conceded' if the nonmoving party fails to timely file an opposition to the motion. *Id.*, citing D.D.C. Local R. 7(b). In *McLean*, the tension between Rule 56(a) and Rule 7(b) was directly at issue in the nonmovant's appeal to the Circuit Court. *Id.* In *McLean*, the nonmovant, acting *pro se*, and appellant, filed his response to defendant's motion for summary judgment two days late, and the *McLean* court granted defendant's motion for summary judgment "as conceded" under Rule 7(b). *Id.* The District Court then denied McLean's motions for reconsideration, and then filed a timely notice of appeal. *Id.*

In this case, this Court denied plaintiff pro se's Rule 56(d) motions. Plaintiff filed a timely Rule 56(d) motion, asking this Court to reject as premature or delay any ruling on defendants' motion until 30 days after the close of the discovery. Pl.'s Rule 56(d) Motion, Doc. No. 22. First, the Court rejected plaintiff's Rule 56(d) motion solely because it failed to comply with the strictures of *Convertino*'s three-tier test. Minute Order, Sept. 24, 2018. Second, the

Court denied it as unnecessary. Op., at 8-10. Although plaintiff had responded to defendants' motion to dismiss, the Court's rulings on his Rule 56(d) motions meant that plaintiff had not properly, timely, and substantively responded to defendants' motion in the alternative for summary judgment. By implications, plaintiff, acting *pro se*, had essentially *conceded* defendants' summary judgment motion because he had failed to oppose it, and thus the Court's denials bring this motion for reconsideration within the ambit of the D.C. Circuit Court's holding and reasoning in *Winston & Strawn, LLP v. McLean*. The foregoing implications gain ground if this Court essentially adopted defendants' SOF and Smiley's declaration as admitted, undisputed facts.

In *McLean*, the D.C. Circuit Court stated that defendants' "motion for summary judgment cannot be 'conceded' for want of an opposition." *Id.* Rather, defendants' always have the burden to show "why summary judgment is warranted." *Id.* If plaintiff failed to oppose such a motion or if the Court's rulings on his Rule 56(d) motions effectively leave defendants' motion unopposed, the defendants still have the burden to show that no genuine dispute exists on any material facts in relations to the elements of relevant rule of law. *See id.*, citing Fed. R. Civ. P. 56(e)(3); *Anderson,* 477 U.S. at 248 ("Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim.").

As he had already shown, defendants have failed to oppose plaintiff's material fact pleadings. In his Reply in Support of his Rule 56(d) Motion, plaintiff's following pleadings create genuine disputes of material facts. Pl.'s Reply in Sup. of Rule 56(d) Mot. and Decl. to Delay this Court's Ruling on Defs.' Mot. In the Atl. For Sum. Judg., Doc. No. (not docketed), at 3-5. First, the two female upper class law students never filed sexual harassment complaints

against plaintiff. Am. Compl. ¶¶ 88-107. Second, these female complainants were principally angry at plaintiff's published ideas. *Id.* Third, defendant Smiley's Report failed to satisfy OCR's burden of proof of production and persuasion. *Id.* ¶¶ 122-137. Fourth, defendant Howard adopted and applied an unknown and unpublished subjective experience test, even though defendant Smiley knew or had reason to know that the female students' complaint did not alleged sexual harassment within the meaning of Title IX and pursuant to the Policy. *Id.* ¶¶ 138-146. Fifth, defendant Smiley, and thus by ratification defendant Howard, adopted a believe the victim stance as evidenced by Smiley rejecting any and all statements by plaintiff as lacking credibility and by Smiley literally using the female students' language from the December 4, 2015 interview. *Id.* ¶¶ 148-161; Defs.' Mot. Sum. Judg., Ex. 1, at 4, 6, and 8 of 247. Sixth, based on Fedje's article, which defendant Smiley read and included in the exhibits to her Report, Question 5 was reasonably related to the teaching of Agency Law. Am. Compl. ¶¶ 181-187; Report, Ex. E, at 142-170 of 247.

Assuming that defendants' motion in the alternative for summary judgment created genuine disputes of material facts, this Court cannot "resolve [such] disputes in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Moreover, nonmovant's pleadings are "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quoting *Anderson*, 477 U.S. at 255). If the movant and nonmovant "tell different stories, one of which is blatantly contradicted by the record, so that non reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Jeffrey v. Lynch*, 217 F.Supp.3d 214, 226-227 (quoting *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). This Court "is only required to consider the materials explicitly cited by the parties, but may on its own accord

consider 'other materials in the record.'" *Lynch*, 217 F.Supp.3d at 227 (quoting Fed. R. Civ. P. 56(c)(3)).

However, if this Court, ignoring Rule 56(c)'s safeguards, has treated defendants' motion for summary judgment "as conceded," the *prima facie* indication of that "concession" would be shown by this Court's reliance only on defendants' facts. In so doing, this Court would treat defendants' SOF as true and will draw all reasonable inferences in defendants' favor. In its Opinion, this Court determined plaintiff's credibility with the following words: "poor choices," "Impenitent," "offending . . . quiz," "[plaintiff's] assertions fall flat," and "audacious move." Op. 1, 11, 15, and 16.

This Court, rejecting Rule 56(c)'s safeguards, stated that defendants "have shown that there is no genuine dispute as to any material fact." *Id.* at 1-2. This Court accepted as true that defendant Smiley's Report made sustained findings of sexual harassment. *Id.* at 3-4. This Court accepted as true that defendant Wutoh had undertaken due diligence as required by the Policy. *Id.* at 4 (Mr. Wutoh "informed Mr. Robinson that the University agreed with the Report's conclusions."). This Court accepted as true that a confidential letter was "placed in his file," and not sent to the two female complainants. *Id.* This Court adopted the following statement by defendant Wutoh: "The decision reached . . . is not subject to reconsideration or appeal" (*Id.*, 4, 18, citing Am. Compl., Ex. 13, Doc. No. 13, at 196), but the Policy's language is "[the Provost's] decision is final and *may* not be appealed to any *other* authority."[3] Am. Compl., Doc. No. 13, Title IX Policy, Ex. 12, at 14. This Court, favoring defendants' motion, created a false

---

[3]      This permissive language "may" did not bar plaintiff from seeking redress and reconsideration from defendant Wutoh. Moreover, even the word "other" suggests that plaintiff could seek reconsideration either from him or from other University officers. As such, based on this fair, near pedestrian reading of the Policy, defendant Wutoh was duty bound to revisit defendant Smiley's Report, especially because he knew or should have known in the ordinary exercise of due care, lacked the required findings of material facts on the elements of sexual harassment that which was the governing rule or regulation on which defendant Howard's burden of production and persuasion would rest. *See* Court's discussion, Op. 4.

impression that plaintiff's efforts at redress failed, saying that his efforts "failed," when he sought help from FIRE and the Faculty Grievance Commission. *Id.* The Court then the EEOC dismissed his complaint, but the Court failed to note that the EEOC issued plaintiff a "Right to Sue" Letter. Org. Compl., Doc. No. 1, ¶¶ __, Ex. ___.

In this Opinion, this Court, so eager to resolve genuine disputes of material facts in favor of defendants' motion, stated that the defendants' "investigation of his conduct complied with the University's Title IX Policy." Op. 16. This Court then stated that "the fact-finding process appears to have been impartial, thorough, and reasonable." *Id.* The Court also stated that it would rely "on the contents of the Title IX Report prepared by Ms. Smiley." *Id.* at 11. This Court later stated that defendant Smiley's Report "is replete with supporting factual findings." *Id.* at 15, citing Defs.' Mot. Ex. 1, at 3-10.

This Court, explicitly ignoring that character evidence is expressly inadmissible under *Federal Rules of Evidence* 404(a), cited with approval statements that rejected the particular occasion of what actually happened, exculpatory evidence, and gender bias. First, defendant Smiley concluded that "Professor Robinson 'exhibited a past pattern of behavior that makes it more like than not[] that he has created hypotheticals of a sexual nature that made students uncomfortable." *Id.* at 15, citing Defs.' Mot. Ex. 1, at 8. However, defendant Smiley's language lacked precision, for she only purportedly investigated Question 5. Second, the Court stated, "From 1998 – 2002, Mr. Robinson sent several 'emails of explicit sexual jokes' to University faculty members." *Id.* However, 20 years ago and only in 1998, plaintiff forwarded three such emails exclusively to the Law School's faculty and staff, who by the way shared similar emails

with him.[4] Unfortunately, defendant Smiley's conclusion, on which this Court inexplicably relied, is classically inadmissible character evidence, on which this Court impermissibly relied.

Third, this Court cherry picked language that confessed its adoption of defendants' motion: "Professor Robinson's exams were always among the most challenging to review." *Id.* at 15. This Court linked that Ms. Dark's statement of a suggestion of implicit conduct and/or language: "we sent them back to him to change hypotheticals that we thought were too . . . I don't want to say sexual [sic] explicit but they're just insensitive. . . to women."[5] *Id.*, citing Interview, Ex. 1, at 22 of 274. However, what Ms. Dark actually said was: "Professor Robinson's exams were always among the most challenging to review. Why? Because they were multiple choice, they were long, and the first, because I was one of the reviewers."[6] Defs. Mot., Ex. 1, at 22 of 274. Even more inexplicable, this Court, sitting not as a trier of fact but as a determiner of whether there is a genuine issue for trial" (*Anderson*, 477 U.S. at 249), edited and mischaracterized Ms. Dark's statement that cast plaintiff's pleadings, which must be accepted as true and correct, in a prejudicial light. In this way, this Court not only adopted the moving party's motion and facts as true and conceded, but also attempted to help the moving party meet its initial heavy burden that no genuine dispute of material fact exists. Based on the foregoing, defendant Smiley's Report lacked not only objectivity, but also "supportive factual findings." In the absence of such objective and supportive factual findings, it is reasonably clear that genuine

[4] One of the evidentiary issues in this case is that by rejecting plaintiff's Rule 56(d) motions, plaintiff could not impeach or cross-examine defendants Wutoh, Love, and Smiley on the Report. He could not get a true and correct copy of the interview tapes of December 4, 2015, or a true and correct transcription of such interviews. He also could not depose interviewees. As a result, this Court took as probative stale memories of events that were prejudicial to plaintiff.

[5] At this time, perhaps 2002, plaintiff's multiple-choice exams were not sex and gender neutral. Plaintiff stopped using sexed and gendered characters after he had an informative talk with then Associate Dean Dark. In one hypothetical out of 100, plaintiff sought to test sex and gender discrimination either in a partnership or LLC context, where a male capital investor sought a date from a lesbian female owner, if she had any hope of getting him to invest in her company. For inexplicable reasons, Dark failed to see the relevance of discrimination hypothetical in business law, and she told him that it might prove more distracting or potentially insensitive than illuminating. With due regard for her and her office, plaintiff edited out the one question.

[6] At this time, the Law School was preparing for an ABA Sabbatical Visit, and the faculty was required to vet our final exams through the dean's and associate dean's offices. Plaintiff's rough draft of his final was vetted along with every faculty member's final examinations.

disputes of material fact exist for trial. *See Holcomb v. Powell*, 433 F.3d 889, 899 (D.C. Cir. 2006) (plaintiff can avoid summary judgment by for example including discriminatory statements by the employer or "other attitudes suggesting the decision maker harbors discriminatory animus.").

Lastly, this Court also showed that it had treated defendants' motion as "conceded" when it held that plaintiff had not suffered an adverse employment action in a discrimination claim under Title VII. An "adverse employment action" is an essential element. *Id*. at 20. Citing *Stewart v. Evans*, this Court stated that a letter of reprimand is not an adverse employment action. 275 F.3d 1126, 1136 (D.C. Cir. 2002). This case says no such thing. It is not remotely relevant. In *Stewart*, the D.C. Circuit Court held that criticism of plaintiff's handling of the payment to the IRS was not an adverse employment action. *Id*.

In this case, after making an unsubstantiated finding of sexual harassment, defendant Howard issued the Notice of Findings and the Disciplinary Action of May 4, 2017 to plaintiff and to the two female students. By sending the Findings and Disciplinary Action to these two female students, defendant Howard has published these documents. Moreover, as a result of this unsubstantiated finding of sexual harassment, which was placed permanently in his personnel file, the Disciplinary Action has affected the terms, conditions, or privileges of plaintiff's employment. For example, plaintiff cannot test his students as the situation in front of him warrants based on their demonstrated learning needs. Accordingly to the Disciplinary Action, plaintiff cannot give his students any testing exercises unless he first permits the Law School dean or dean's designate to review and approve such exercises two weeks in advance. Plaintiff must work under these sanctions until he retires from Howard University. However, this condition means that plaintiff cannot immediately respond to a pressing student's learning and

comprehension needs.   One of the clear privileges of tenured professors is using their considerable teaching experiences to test their students in a manner that is appropriate to the substantive materials and the students' learning challenges.   Although plaintiff still has his tenured job, he cannot engage freely in one of the most vital privilege of his job—teaching and testing.

In this way, plaintiff has suffered an adverse employment action, under which he will suffer additional sanctions, including termination, if he fails to comply with the Disciplinary Action's strict conditions.   Moreover, by affidavit, plaintiff stated that he will suffer future lost employment opportunities because defendant Howard through an unsubstantiated finding has labeled him as a sexual harasser.   *See Holcomb*, 433 F.3d at 902 ("the threshold is met when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.").

In the end, whether plaintiff has suffered an adverse employment action is a jury question, and a reasonable jury could find that plaintiff has suffered an adverse action.   *Cf. Richardson v. Gutierrez*, 477 F.Supp.2d 22, 29 (D.D.C. 2007), citing *Czekalski v. Peters*, 475 F.3d 360, 364-365 (D.C. Cir. 2007) ("[w]hether a particular reassignment constitutes an adverse action for purposes of Title VII is generally a jury question.").   By determining this genuine dispute of material fact, this Court impermissibly invaded the province of the jury

## IV.    CONCLUSION

For the foregoing reasons, plaintiff pro se respectfully requests that the Court reconsider and amend its Opinion of November 20, 2018.

Respectfully submitted,

By /s/

Reginald Leamon Robinson
Plaintiff Pro Se
1904 Autumn Ridge Circle,
Silver Spring, MD  20906
(240) 876-7439
heru.hermes@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Rule 59(e) Motion for Reconsideration and accompanying Memorandum was served at the District Court for the District of Columbia's drop box on December 17, 2018 and on counsel by email on December 17, 2018 and by first-class mail, postage prepaid on December 18, 2018, upon:


Timothy F. McCormack, Partner
Ballard Spahr, LLP
300 East Lombard Street,
18ª Floor
Baltimore, MD  21202-3268

Michelle McGeogh
Ballard Spahr, LLP
300 East Lombard Street,
18ª Floor
Baltimore, MD  21202-3268

Maraya Pratt
Ballard Spahr, LLP
300 East Lombard Street,
18ª Floor
Baltimore, MD  21202-3268

Reginald Leamon Robinson,
Plaintiff Pro Se
1904 Autumn Ridge Circle,
Silver Spring, MD  20906
(240) 876-7439
heru.hermes@gmail.com