**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| REGINALD LEAMON ROBINSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 18-00518-TNM |
| ) | |
| HOWARD UNIVERSITY, INC., et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR RECONSIDERATION**

Plaintiff Reginald Leamon Robinson ("Professor Robinson"), by and through counsel, respectfully submits this reply in support of his motion for reconsideration.[1] Professor Robinson is seeking reconsideration of the Court's Order dated November 20, 2018 ("Order"), which granted the Defendants Howard University, Anthony K. Wutoh ("Provost Wutoh"), Vanessa Love and Candi Smiley ("Ms. Smiley") (collectively "Defendants")'s Motion to Dismiss, or in the Alternative for Summary Judgment ("Motion") and denied the Plaintiff's Rule 56(d) motion. The Defendants filed a Memorandum in Opposition to Plaintiff's Motion for Reconsideration ("Opposition") on January 28, 2019.[2] Their Opposition misses the point. Professor Robinson is

---

[1] Any arguments or assertions made in Reginald Leamon Robinson's *pro se* Motion for Reconsideration that are not responded to in this Reply Memorandum are not conceded or abandoned. Instead, Professor Robinson draws the Court's attention to his Motion for Reconsideration for support of such arguments and assertions. In addition, to the extent that Professor Robinson does not rebut any contentions made by the Defendants, Professor Robinson is not conceding such contentions.

[2] Any arguments or assertions made in Professor Robinson's Motion for Reconsideration that the Defendants failed to respond to should be construed as conceded.

not seeking simply to relitigate his claims. He is instead pointing out serious and fatal errors that led to the Court's Order and affording the Court an opportunity to correct a manifest injustice.

At the outset, it should be noted that Professor Robinson was *pro se* when the previous documents in this case were being filed and considered. This filing is the first on which he has had the assistance of counsel. All previous filings should be given leeway as a *pro se* litigant. (ECF 34, at 8.)

## I.      THE STANDARD FOR RECONSIDERATION

A Federal Rule of Civil Procedure Rule 59(e) motion is appropriate to correct a ruling that is legally and/or factually incorrect. Fed. R. Civ. P. 59(e); *see also Zyko v. DOD*, 180 F. Supp. 2d 89, 91 (D.D.C. 2001); *Hammond v. Kempthorne*, 448 F. Supp. 2d 114, 118 (D.D.C. 2006) ("Motions to alter or amend a judgment under Rule 59(e) 'are not to be used to relitigate matters already argued and disposed of; they are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law.' "). That is precisely what Professor Robinson is seeking to do here. A Rule 59(e) motion " 'need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Dyson v. D.C.*, 710 F.3d 415, 420 (D.C. Cir. 2013) (citations omitted). "Manifest injustice" is used to remedy "(1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Mohammadi v. Islamic Republic of Iran,* 947 F. Supp. 2d 48, 78 (D.D.C. 2013). Manifest injustice is best applied to "rulings that upset settled expectations – expectations on which a party might reasonably place reliance." *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 541 (D.C. Cir. 2007) (citations omitted).

It is true that, per "its Standing Order, the Court typically 'will not entertain' motions for reconsideration that feature 'arguments which should have been previously raised, but are being raised for the first time," and that the Court has so informed Professor Robinson in the past. (ECF 34, at 11 n.3) Nonetheless, Professor Robinson is requesting that the Court consider this Motion for Reconsideration. Professor Robinson is pointing out errors in the Court's decision that do not comply with precedent, which is an appropriate use of a motion to reconsider.[3]

The Court granted the Defendants' Motion to Dismiss or in the Alternative for Summary Judgment ("Motion for Summary Judgment") in violation of this jurisdiction's precedent and in contradiction to the facts of the case. This motion affords the Court the opportunity to correct this manifest injustice. *See Qwest Servs. Corp.,* 509 F.3d at 541.

## II.    THE HISTORY OF THE CASE

This case was dismissed and closed very quickly. The Complaint in this case was filed on February 26, 2018 (ECF No. 1),[4] and the Amended Complaint was filed May 18, 2018 (ECF No. 5), and stricken June 7, 2018 (Minute Order dated June 7, 2018). Professor Robinson filed a First Amended Complaint on June 28, 2018 (ECF No. 13) and attachments and motions to supplement June 28, 2018 (ECF No. 14) and July 26, 2018 (ECF No. 19). On July 30, 2018, the Court lifted a stay on Defendants' deadline to file a responsive pleading and ordered that the Defendants file a responsive pleading by August 20, 2018.

---

[3] Professor Robinson filed his motion *pro se* and only hired counsel to prepare this rely and the appeal.

[4] Professor Robinson, appearing *pro se* at that time, dropped the original in the drop box at the Courthouse on February 24, 2018. It was processed on February 26, 2018. The time period for filing the claim was ninety days of his receipt of the notice. (ECF 1.) The Notice was dated November 27, 2017, and mailed to Mr. Robinson in the U.S. Postal Service. Even if he had received the notice the next day, November 28, 2017, the Complaint was timely filed.

The Defendants took only three days to file a responsive pleading, filing their Motion for Summary Judgment on August 2, 2018. (ECF No. 20.) Professor Robinson filed a Motion for Order to Delay Response to Defendant's Motion to Summary Judgment on August 27, 2018 (ECF No. 22), which was denied by the Court as noncompliant with the Court's rules on September 24, 2018 (ECF No. 24), and then filed a second Motion to Delay Response on October 5, 2018 ("Motion to Delay") (ECF 29), seeking discovery before the summary judgment motion would be decided. On October 26, 2018, the Defendants filed an Opposition to Professor Robinson's Motion to Delay Response ("Defendants' Opposition"). (ECF 31.) On November 20, 2018, the Court denied Professor Robinson's Motion to Delay. (ECF 35.) The Court granted dismissal of counts 4, 5, 6, and 10, granted summary judgment as to counts 1, 2, 3, 7, 8, and 9, and ordered the case closed. (ECF 35.) No discovery at all was had in the case prior to its closure.

### III.    THE MOTION TO DELAY SHOULD HAVE BEEN GRANTED

To prevent manifest injustice, the Court should reverse its decision denying Professor Robinson's Motion to Delay. Professor Robinson was denied the opportunity to engage in discovery and this denied him the opportunity to respond effectively to the Defendants' Motion for Summary Judgment. The Order was entered contrary to law and the facts of this case.

### A.    Standard for the Ability to Engage in Discovery

Because a motion for summary judgment is based on the discovery conducted in a case, the opportunity to engage in discovery is indispensable. The Supreme Court has cautioned that summary judgment should only be entered "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The D.C. Circuit also follows this rule:

> 'Summary judgment is premised on the notion that parties will have had 'adequate time for discovery' to establish whether a genuine issue of material fact exists.' A grant of summary judgment is therefore appropriate only if both parties '[have] had a full opportunity to conduct discovery,' and 'it is … the general rule that decision by summary judgment is

> disfavored when additional development of facts might illuminate the issues of law requiring decision. Thus, the District of Columbia Circuit 'has long recognized that a party opposing summary judgment needs a reasonable opportunity to complete discovery before responding to a summary judgment motion and that *insufficient time or opportunity to engage in discovery is cause to defer decision on the motion*.

*Scarborough v. Harvey*, 493 F. Supp. 2d 1, 17 (D.D.C. 2007) (citations omitted) (emphasis in original). "While the district court enjoys 'broad discretion in structuring discovery,' summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.' " *Convertino v. U.S. DOJ*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quotations omitted). Thus the D.C. Circuit Court has reversed the District Court's decision to grant summary judgment before discovery. *Id.* at 102; *Scarborough*, 493 F. Supp. 2d at 17-18 (Reversing grant of summary judgment and ordering discovery where "the parties have not engaged in any discovery whatsoever…. Otherwise, … the plaintiffs would be 'forced to operate in the dark, with no discovery,' in opposing the defendant's motion for summary judgment."); *Azhar Ali Khan v. Parsons Glob. Servs., Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005) (reversed on other grounds) ("The court has long recognized that a party opposing summary judgment needs a 'reasonable opportunity' to complete discovery before responding to a summary judgment motion and that 'insufficient time or opportunity to engage in discovery' is cause to defer decision on the motion."); *McCready v. Nicholson*, 465 F.3d 1, 17-18 (D.C. Cir. 2006) (Summary judgment reversed and case remanded for discovery.).

The Federal Rules give the district courts the tools with which to allow discovery following a premature motion for summary judgment. Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other

appropriate order." Fed. R. Civ. P. 56 (d). This Rule was put in place to prevent "railroading the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *Kakeh v. United Planning Org.*, 537 F. Supp. 2d 65, 71 (D.D.C. 2008).

There are three requirements which a Rule 56(d) affidavit or declaration must satisfy: (1) it must state the facts the party intends to discover and why the facts are necessary to the litigation; (2) the party must explain why he cannot produce the documents; and (3) the party must show that the information is discoverable. *Convertino*, 684 F.3d at 99-100 (Reversing and remanding grant of summary judgment before discovery.). When the non-moving party responds to a summary judgment motion to delay response, the motion "should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995); *see also United States ex rel. Folliard v. Gov't Acqs., Inc.*, 880 F. Supp. 2d 36, 42 (D.D.C. 2012).

B. Professor Robinson Was Denied the Opportunity to Participate in Discovery in Contravention to Law

Professor Robinson did everything required to prove that he was entitled to discovery prior to the grant of a summary judgment motion. Professor Robinson filed a motion to delay the Court's decision pending discovery, and contemporaneously therewith filed a Rule 56(d) Declaration ("Declaration") as required by the Federal Rules of Civil Procedure. (ECF 29.) Professor Robinson's Declaration states that no discovery had been conducted and that he needed discovery to oppose the Defendants' motion for summary judgment. In particular, Professor Robinson stated that he needed internal institutional documents that remained completely within the Defendants' control. Professor Robinson detailed the documents he would seek in discovery and documented the need for the records. His ten-page Declaration included all manner of facts that he would seek

in discovery, the reasons why the facts are necessary to the litigation, the fact that all the necessary facts were within the Defendants' exclusive control, and the fact that all the necessary facts were discoverable. *Id.; see Convertino*, 684 F.3d at 99-100. He stated that he sought "internal, institutional documents, records, and correspondences in Defendant Howard's control, dominion, and possession, and not in the public domain." (ECF 29-2, at 2.) "In addition, the internal, institutional documents, records, and correspondences that Plaintiff seeks to discover[ ] are essential to every element of Plaintiff's claims against Howard University and/or its officers, agents, and/or employees." (ECF 29-2, at 2-3.)

The Defendants argue that Professor Robinson is not entitled to discovery under Rule 56(d) because he failed to explain how the facts he seeks are necessary to the litigation and offers only conclusory suggestions that discovery will produce evidence of improper motives, and the Court faulted Professor Robinson for "offer[ing] little beyond … conclusory statements." (ECF 34, at 17; ECF 42, at 7.) The Court posited that Professor Robinson did not allege sufficient facts to prove his theories, and went on to say that "the available evidence shows that" the Defendants' position is correct. (ECF 34, at 17-18.) This is contrary to the record.

In his Declaration, Professor Robinson stated, *inter alia*, that:

- He required documents that would show the Defendants' past experiences with applying and enforcing Title IX rules and other federal rules and regulations. This goes to the suggestion of improper motives.

- He required documents regarding the institutional processes and procedures, and related reports and assessments, for properly and consistently supervising investigative personnel in the Title IX office. This goes to the suggestion of improper motives.

- He required documents that would show how and to whom Provost Wutoh, Title IX decisional authority, delivered reports or made oral presentations regarding compliance and risk assessment. This goes to the suggestion of improper motives.

- He required documents that would show the identity of the two females who accused him of sexual harassment. This information is clearly necessary for him to be able to

prove his case that he did not sexually harass or discriminate against them and that he was discriminated against in violation of his contract and the implied duties with his employer.

- He required records that would show the transcriptions of recordings and interviews that are relevant to the case. This information is necessary to prove that he did not sexually harass or discriminate against students and that he was discriminated against in violation of his contract and implied duties with his employer.

- He required documents that show who the Defendants interviewed in their investigation of the allegations of the case. This information is necessary to prove that he did not sexually harass or discriminate against students and that he was discriminated against in violation of his contract and implied duties with his employer.

- He required records showing how the Defendants would apply the test in a subjective experience. This goes to the suggestion of improper motives.

- He required documents regarding any legal analysis as to whether the Defendants' Title IX policy was applied objectively. This goes to the suggestion of improper motives.

- He required documents that refer to him, particularly with regard to the allegations that were made against him. Obviously, the documents in the Title IX office that refer to him and that relate to the allegations made against him are necessary to the litigation.

- He required documents that show raw institutional data on which the Defendants rely to publish their Clery Act reports. This goes to whether there was an anti-male bias, whether the contract and implied duties were violated, whether there was an erroneous determination, and whether there was negligence in the preparation of the report.

- He required documents regarding sexual harassment and discrimination complaints against University employees and students. This goes to whether there was an anti-male bias, whether the contract and implied duties were violated, whether there was an erroneous determination, whether there was deliberate indifference, and whether there was negligence in the preparation of the report.

- He required documents of investigations prepared by Ms. Smiley. This goes to whether there was an anti-male bias, whether the contract and implied duties were violated, whether there was an erroneous determination, whether there was deliberate indifference, and whether there was negligence in the preparation of the report.

- He required documents between the Title IX office and Howard University's leadership after the filing of the complaints against him and during the investigative period. This goes to whether there was an anti-male bias, whether the contract and implied duties were violated, whether there was an erroneous determination, whether there was deliberate indifference, and whether there was negligence in the preparation of the report.

[8]

- He required documents between the Title IX office and Howard University regarding whether Ms. Smiley applied the wrong evaluation standards. This goes to whether there was negligence, and whether there was deliberate indifference.
- He required documents between the Title IX office and Howard University regarding whether Provost Wutoh focused on the correct documents. This goes to whether there was negligence, and whether there was deliberate indifference.

- He required documents regarding the Jane Doe 5 and 6 cases. This goes to whether there was negligence.

- He required documents regarding why the Notice of Findings was issued. This goes to whether there was an anti-male bias, whether the contract and implied duties were violated, whether there was an erroneous determination, whether there was deliberate indifference, and whether there was negligence in the preparation of the report.

- He required documents regarding any correspondences between Howard University and governing bodies regarding the Notice of Finding. This goes to whether there was an anti-male bias, whether the contract and implied duties were violated, whether there was an erroneous determination, whether there was deliberate indifference, and whether there was negligence in the preparation of the report.

- He required documents regarding any correspondence for the mandatory mediation meeting in this case. This goes to whether there was an anti-male bias, whether the contract and implied duties were violated, whether there was an erroneous determination, whether there was deliberate indifference, and whether there was negligence in the preparation of the report.

- He required documents regarding whether Provost Wutoh complied with his due diligence duty before issuing the Notice of Findings. This goes to whether an anti-male bias, whether the contract and implied duties were violated, whether there was an erroneous determination, whether there was deliberate indifference, and whether there was negligence in the preparation of the report.

- He required documents regarding whether and under what circumstances Provost Wutoh can delegate his authority. This goes to whether there was an erroneous determination and whether there was negligence.

- He required tape recordings of the mandatory mediation meeting. This goes to whether there was an anti-male bias, whether the contract and implied duties were violated, whether there was an erroneous determination, whether there was deliberate indifference, and whether there was negligence in the preparation of the report.

(ECF 29-2.) This was more than sufficient to show that Professor Robinson needed discovery, and that a delay in the consideration of the summary judgment motion to allow Professor Robinson an opportunity to conduct relevant discovery was essential. *See Convertino,* 684 F.3d at 99-100.

There has been no discovery in this case, no answer, and no pleadings other than the Amended Complaint and the Motion for Summary Judgment. There were exactly three days between the filing of the Amended Complaint and the filing of the Motion for Summary Judgment. Professor Robinson did everything necessary to prove that he needed to participate in discovery. *See Convertino,* 684 F.3d at 99-100; *see also* Fed. R. Civ. P. 56(d).

The Court's denial of Professor Robinson's Motion to Delay was inconsistent with this jurisdiction's precedent. *See Celotex Corp.*, 477 U.S. at 322; *Convertino,* 684 F.3d at 102; *Scarborough*, 493 F. Supp. 2d at 17-18.  The D.C. Circuit Court has admonished the district court to take a "generous approach" when a non-moving party seeks discovery before consideration of a summary judgment motion. *See Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995). The decision to deny Professor Robinson the opportunity to participate in discovery prejudiced Professor Robinson and was fundamentally unfair in light of settled law. *See Mohammadi,* 947 F. Supp. 2d at 78. Professor Robinson has already noted an appeal of this decision. This motion is an opportunity for the Court to correct the manifest injustice of this order.

IV.   THE MOTION FOR SUMMARY JUDGMENT SHOULD NOT HAVE
        BEEN GRANTED

Because there has been no discovery in this case, it is difficult to prove the presence or absence of genuine disputes. Still, there are genuine disputes over material facts that preclude summary judgment. Even without these undisputed facts, the Defendants are not entitled to summary judgment. Additionally, the Court did not rule on the presence or absence of genuine disputes of material facts. Summary judgment is therefore inappropriate.

A.  The Standard for Summary Judgment

A motion for summary judgment should be granted only if the pleadings and evidence "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is appropriate when " 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Parker v. Moriarty,* 332 F. Supp. 3d 220, 233 (D.D.C. 2018) (citations omitted). It is clear that:

> [T]he fundamental questions on summary judgment are (1) whether the movant has borne its 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact,' and, if so, (2) whether the nonmoving party has borne her burden 'to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'

*Grimes v. District of Columbia*, 794 F.3d 83, 94-95 (D.C. Cir. 2015) (citations omitted).

Generally, a party asking for summary judgment must cite material facts in the record it considers undisputed, the non-moving party must cite material facts in the record that are disputed, and the court must determine whether or not there are disputed material facts. "In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record – including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence – in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute." *Parker,* 332 F. Supp. 3d at 233; *see also* Fed. R. Civ. P. 56(c)(1). The non-moving party needs to show, by evidence in the record, material facts that are disputed and that show that the movant is not entitled to summary judgment. Both parties must support their contentions by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56 (c)(1).

When it decides a summary judgment motion, "[t]he court should state on the record the reasons for granting or denying the motion." Fed R. Civ. P. 56(a). "When faced with a motion for summary judgment, the district court may not assess credibility or weigh evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with 'all justifiable inferences … drawn in his favor.' " *Parker,* 332 F. Supp. 3d at 233. A court can "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

B.  Discovery is Necessary for Summary Judgment

Professor Robinson needs discovery in order to, as litigants usually do, go through the Defendants' statement of facts line by line and dispute particular facts with cites to the record. *See supra* at 5-11. Professor Robinson is not able, as usually occurs, to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial' " – because *there are no* "depositions, answers to interrogatories, and admissions on file…." *See Grimes*, 794 F.3d at 94-95. If none of these types of evidence exists in the record, then Professor Robinson cannot cite to them.

Indeed, this inability is precisely why the Federal Rules allow for a nonmovant to file a Rule 56(d) motion requesting a delay in the response to a motion for summary judgment. The nonmovant should be allowed discovery prior to having to respond to the movant's statement of

undisputed facts. For this reason, Professor Robinson should not be required to respond to the Defendants' statement of undisputed facts until he has been afforded discovery.

The evidence Professor Robinson needs to put forward to show that there are material facts in dispute are solely in the control of the Defendants. Professor Robinson's Declaration lists the items he wishes to discover from the Defendants, explains why they are needed, notes that all the necessary documents are within the Defendants' exclusive control, and states that the necessary documents are discoverable. ECF 29; *see Convertino,* 684 F.3d at 99-100.

For all these reasons, discovery is necessary for Professor Robinson to show the existence of genuine disputes of material fact. *See Scarborough,* 493 F. Supp. 2d at 11-12 ("Courts will grant a motion for summary judgment pursuant to Rule 56(c) "*after adequate time for discovery*….") (emphasis added).

C.  There are Genuine Disputes of Material Fact

Even though there was no discovery and even though nearly all relevant evidence is within the exclusive control of the Defendants, Professor Robinson still managed to show that there are genuine disputes of material fact, including, but not limited to:[5]

- Whether Ms. Smiley gave Professor Robinson notice of the alleged facts. Professor Robinson disputes receipt of the notice. (ECF 33, at 10 and ECF 13, at 214-226.)

- Whether Professor Robinson's letter dated December 21, 2015 should be considered a response to the allegations. Professor Robinson disputes that it should. (ECF 33, at 11.)

- Whether the investigation was thorough as required by the Title IX Policy. Professor Robinson disputes that it was. (ECF 33, at 12.)

- Whether the investigation was impartial. Professor Robinson disputes that it was. (ECF 33, at 12.)

---

[5] While it is true that Professor Robinson did not list these disputed material facts in a "separate concise statement of genuine issue" as required by Local Rule 7(h), since he filed the motion *pro se* and has been afforded leeway, the fact that he listed these disputed material facts in his opposition instead of in a separate, attached list, should not preclude consideration of them.

- Whether the investigation was in compliance with the Title IX Policy. Professor Robinson disputes that it was. (ECF 33, at 13.)

- Whether the Notice of Finding was supported by evidence. Professor Robinson disputes that it was. (ECF 33, at 14.)

- Whether Ms. Smiley made findings of material facts or conclusions of law. Professor Robinson disputes that she did. (ECF 33, at 14.)

- Whether and how Provost Wutoh satisfied his due diligence requirement. Professor Robinson disputes that he did. (ECF 33, at 15.)

- Whether the Defendants' decision was arbitrary and capricious. Professor Robinson states that it was. (ECF 33, at 16.)

- Whether the Defendants' actions changed the terms and conditions of Professor Robinson's employment. Professor Robinson states that they did. (ECF 33, at 18.)

- Whether Question Five was an inappropriate question. Professor Robinson states that it was. (ECF 33, at 20.)

- Whether any in-class responses required inappropriate answers. Professor Robinson disputes that they did. (ECF 33, at 20, 21.)

Since there was no discovery, Professor Robinson cannot point to places in the record where he disputes these facts with evidence. All these facts are, however, disputed either in Professor Robinson's Declaration (ECF 29-2), or in Plaintiff *Pro Se*'s Reply in Support of His Rule 56(d) Motion and Declaration to Delay This Court's Ruling on Defendants' Motion in the Alternative for Summary Judgment (ECF 33), or in the Amended Complaint (ECF 13). Professor Robinson has declared each of these material facts to be disputed – which is all that he can do absent discovery.

### D.  The Facts that the Defendants Claim are Undisputed Do Not Entitle the Defendants to Summary Judgment

Moreover, the facts that the Defendants claim are undisputed do not necessarily lead to the conclusion that the summary judgment should be granted. That is, these facts do not lead inexorably to the conclusion that Professor Robinson cannot prevail.

*First,* the facts that the Defendants claim are undisputed do not affect whether or not Professor Robinson can prove breach of contract and/or breach of implied duties of good faith and fair dealing (Counts 1 and 2). Although the Defendants state that these "claims are based on a false premise" because the policy is not a contract, the Court held that "the University could have breached its contract with Mr. Robinson if it violated its Title IX Policy." (ECF 34, at 13.) Thus the claim is a valid claim provided that Professor Robinson can prove that the Defendants breached the policy or his employment contract. Moreover, the breach of contract and breach of implied duties depend at least in part upon Professor Robinson's employment contract. That contract was not entered into the record. The Court cannot find that the Defendants did not breach the contract or the implied duties without ever having reviewed the employment contract.

*Second,* Professor Robinson can prove erroneous outcome (Count 3) if allowed discovery. Erroneous outcome requires that Professor Robinson prove that he was wrongfully found responsible of an offense of which he actually was innocent, and the finding was based on gender bias. *See Doe v. George Wash. Univ.*, 305 F. Supp. 3d 126, 133 (D.D.C. 2018). To satisfy this claim, he must allege sufficient facts to cast "some articulable doubt on the outcome of the … proceeding." He also must show that the erroneous finding was motivated by gender bias. *Id.* It is abundantly clear that Professor Robinson needs discovery in order to be able to prove this claim. In order to prove that he was actually innocent, Professor Robinson needs access to the file of the allegations. There simply is no way for him to prove his innocence without access to the

Defendants' files, but he was denied the opportunity to see the files when he was denied discovery. The Defendants filed a motion for summary judgment, attached certain documents, and claimed that these documents proved that Professor Robinson was at fault – but Professor Robinson was not given the opportunity to review the documents he wished to review (instead of just the ones the Defendants wanted in front of the Court) and given access to those documents that would allow him to prove that count. What is abundantly clear is that the Defendants' filings do not preclude Professor Robinson being able to prove this count if given a chance to conduct discovery.

Professor Robinson will also be able to prove "deliberate indifference" if allowed discovery. The Court held that "Mr. Robinson offers little more than mere speculation" to prove this cause of action. (ECF 34, at 18.) Had Professor Robinson been granted time for discovery, he would have been able to offer facts that showed this upon which a reasonable jury could have found in his favor. He cannot prove these facts without having access to documents within the Defendants' private files. Additionally, while faulting Professor Robinson for not offering facts and denying him the opportunity to discover them, the Court also accepts Provost Wutoh's statement that he carefully reviewed the recommendation, without allowing Professor Robinson to test that statement through discovery.

*Third,* Professor Robinson will be able to prove intentional and negligent infliction of emotional distress (Counts 7 and 8) if allowed discovery. The Court held that "despite his repeated claims of a pernicious, anti-male bias, Mr. Robinson offers no facts or allegations from which the Court can reasonably infer such a motive." (ECF 34, at 23.) Again, had Professor Robinson been given the time he was entitled to for discovery, he would have been able to offer these facts, on which a reasonable jury could found in his favor. He cannot prove motive without having access

to documents within the Defendants' private files. Moreover, the facts that the Defendants claim are undisputed do not preclude an improper motive.

*Fourth,* given the opportunity, Professor Robinson will be able to prove negligence (Count 9). The Court dismissed the negligence claim on the basis that the claim "is based on unfounded speculation and conclusory statements." (ECF 34 at 23-24.) The Court stated that the negligence claim requires a showing of what the employer knew or should have known and that the employer did not adequately supervise the employee. (ECF 34, at 24.) It is not possible for Professor Robinson to show what the Defendants knew or should have known without seeing the Defendants' files. The papers submitted by the Defendants do not preclude the possibility that there are other papers in their files that would show inadequate supervision.

*Fifth,* the Court dismissed the claim for declaratory and injunctive relief (Count 10) because it "will dismiss or grant summary judgment to the Defendants on [all] his … claims…." (ECF 34, at 24.) It follows then that if the Court grants this Motion, Count 10 should be reinstated as well.

### E.   The Court Did Not Rule on the Presence or Absence of Genuine Disputes of Material Fact

The Court did not do the requisite weighing of the presence or absence of material facts. Nowhere in the Court's Opinion does it state which material facts it finds undisputed. (*See* ECF 34.)

Of course, the Court is required to analyze the evidence "in the light most favorable to the non-movant, with 'all justifiable inferences … drawn in his favor.' " *Parker,* 332 F. Supp. 3d at 233. "[T]he district court may not assess credibility or weigh evidence…." *Id.* Instead, the Court "must view the evidence in the light most favorable to the non-moving party. The Court must

therefore draw 'all justifiable inferences' in the non-moving party's favor and accept the non-moving party's evidence as true." *Scarborough,* 493 F. Supp. 2d at 12.

Here, the Court did not seem to do so, but rather it appears that the Court simply adopted the facts which the Defendants claimed were undisputed. There is no mention of the facts Professor Robinson declares. There is no viewing the facts most favorable to Professor Robinson. The Court simply accepts the Defendants' view of the facts.

The Court should correct its error and deny the Defendants' Motion for Summary Judgment.

## V.     THE COURT IMPROPERLY ADMITTED CHARACTER EVIDENCE

The Court improperly relied upon the Defendants' Report in making its decision. The Report is neither material nor comprehensible and is therefore not relevant to the case at issue. Moreover, the Report is replete with inadmissible hearsay. Because there has been no discovery, Professor Robinson has not had an opportunity to probe the report nor to argue its applicability. Yet this Court relied heavily on the Report as a substantive basis to determine that, as a matter of law, Professor Robinson's claims lack merit. This is in contradiction to Fed. R. Civ. P. Rule 56(c).

Moreover, the conclusions in the Report are subjective and based on inadmissible character evidence. The Court relied upon (and quoted in its Opinion) the fact that Report stated that Professor Robinson "exhibited a past pattern of behavior that makes it more likely than not[ ] that he has created hypotheticals of a sexual nature that made students uncomfortable." (ECF 34, at 15.) The Court stated that Professor Robinson sent several "emails of explicit sexual jokes" to female University members, and that "a faculty member alleged Professor Robinson made inappropriate comments to her about socializing with him." (ECF 34, at 15.) The Court also pointed to part of the Report that alleged that Professor Robinson's past exams were insensitive to

[18]

women and had to be changed. (ECF 34, at 15.) The Court concluded that the writer of the Report

thus "considered objective contextual evidence in determining that Mr. Robinson's question

constituted unwelcome conduct of a sexual nature." (ECF 34, at 15.) The Report concluded that

"[t]his pattern of behavior adds credibility to the allegations that Professor Robinson was

inappropriate with his students." (*Id.*)

This conclusion is the epitome of prohibited character propensity evidence. The Court

clearly based its decision on inadmissible character evidence. This reliance is not allowed in the

determination of a summary judgment motion.

*First,* the Federal Rules of Evidence prohibits the use of character evidence in civil

proceedings. *See* Fed. R. Evid. 404(a). Fed. R. Evid. 404(a) states that "[e]vidence of a person's

character or character trait is not admissible to prove that on a particular occasion the person acted

in accordance with the character or trait." Fed. R. Evid. 404(a). The Defendants do not dispute that

such evidence is not allowed,[6] but rather they claim that the Report is not offered in violation of

Fed. R. Evid. 404(a). Whether or not the Report was *offered* for character evidence, it is clear that

the Court *used* the Report as evidence of a bad character that showed a propensity to have

committed the acts.

*Second,* the Court improperly weighed the evidence and/or made credibility

determinations. There are multiple times that it was clear that the Court impermissibly made these

determinations. The Court called Professor Robinson's filing a lawsuit an "audacious move," a

statement that shows that the Court is poorly disposed towards Professor Robinson. The Court

stated that "Ms. Smiley and Mr. Wutoh appear to have followed the University's Title IX Policy,

---

[6] Indeed, the Defendants state that "a Court might be barred from considering character evidence…." (ECF 42, at 11.)

[and] relied on objective evidence in making their decision….." (ECF 34, at 24.), an unfounded

statement that shows that the Court was predisposed to favor defendants.

*Third,* the Court described the case in such a way that it is clear that it was making improper

assumptions of Professor Robinson's character and/or credibility. The Court described Professor

Robinson's conduct as "poor choices." (ECF 34, at 1.) The Court referred to Professor Robinson

as "[i]mpenitent." (ECF 34, at 1.) The Court noted that the Report stated that Professor Robinson

"exhibited a past pattern of behavior that makes it more likely than not[ ] that he has created

hypotheticals of a sexual nature that made students uncomfortable." (ECF 34, at 15.) The Court

noted that "[f]rom 1998-2000, Mr. Robinson sent several 'emails of explicit sexual jokes' to

University faculty members" – bringing up propensity evidence from twenty years ago. (ECF 34,

at 15.) The Court noted that " 'a faculty member alleged Professor Robinson made inappropriate

comments to her about socializing with him.' " The Court also noted that Professor Robinson's

exams were, if not sexually explicit, then at the very least insensitive towards women. (*Id.*) The

Court stated that "Professor Robinson used an inappropriate and sexually suggestive question."

(ECF 34, at 25.) The Court even described the Equal Employment Opportunity Commission's

dismissal and notice of rights unfairly and in a way that favored the Defendants.[7] (ECF 34, at 5.)

It is clear that the Court improperly considered character evidence and weighed the

evidence in finding against Professor Robinson. This credibility determination is not allowed in a

motion for summary judgment. Professor Robinson should have been afforded, but was not

---

[7] The Court noted that "[t]he EEOC dismissed his complaint, as it was 'unable to conclude that the information obtained establishes violations of the [applicable] statutes.' " (ECF 34, at 5.) Although technically true, the next sentence of the notice is that "[t]his does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." The Dismissal and Notice of Rights stated that Professor Robinson could sue the Defendants. This is a necessary step and a common response prior to filing a lawsuit in federal court alleging sexual discrimination and/or harassment.

afforded, all benefit of the evidence and all inferences to be drawn therefrom. The decision was improperly based, at least in part, on inadmissible character evidence. This Court should correct its error and deny the Motion for Summary Judgment.

## CONCLUSION

For these reasons and any other reasons which may appear to the Court, Reginald Leamon Robinson respectfully requests that the Court grant his motion for reconsideration, reverse its grant of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, and allow the case to move forward with discovery.

Respectfully submitted,

/s/Donna L. Biderman, Esq.
D.C. Unified Bar No. 425837
LAW OFFICE OF DONNA L BIDERMAN, PLLC
4015 Chain Bridge Road
Fairfax, Virginia 22030
(703) 966-5434 telephone
(888) 450-8569
dbiderman@bidermanlaw.com
Counsel to Reginald Leamon Robinson

Dated: February 11, 2019

## CERTIFICATE OF SERVICE

I hereby certify that, on this 11th day of February, 2019, this document was electronically filed with the Clerk's Office using this Court's electronic filing system, which will then serve a notice of electronic filing on the Judge and on all counsel for Defendant.

/s/Donna L. Biderman